[Crim. No. 36404. Second Dist., Div. Two. Sept. 15, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL M. BETTS, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Janice L. Feinstein, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—Ronald Ward was engaged in the business of raising, breeding and selling birds, some varieties of which were quite valuable. According to his testimony, when he suffered a series of robberies resulting in substantial loss, he decided to stay in his camper on the business property in an effort to thwart further criminal activity. Ward's roommate was likewise quartered on the property, in a dwelling behind the pet shop. Both were so situated at 3 a.m. on April 9, 1979. At that time Ward saw a person come over a 10-foot redwood fence bordering the premises. The intruder spent a few moments playing with Ward's guard dog and then proceeded down a line of cages in which the

birds were housed, testing the padlocks as he went. As the person, observed to be appellant, came to some 18 feet from Ward, the latter stepped in front of him with a shotgun and flashlight and ordered him to put his hands on his head. Appellant bolted and found his way to the top of the cages where he was fired at twice by Ward. When the second shot struck him, appellant fell over, dropping an object from his hands but quickly recovered and continued his retreat on to and off of the roof of a building in the adjoining lot, finally coming to bay behind a commercial garbage can. From there he was called out by Ward and Ward's roommate, who had been summoned, returned to the original situs and arrested by police. It was subsequently discovered a padlock on one of the cages had been broken. A "breaker bar" was found on top of the cages; blood stains appeared there and in Ward's yard; spent shotgun shell casings were found near the cages.

Appellant was charged with attempted grand theft (Pen. Code, §§ 664/487, subd. 1), was convicted by a jury of attempted petty theft (Pen. Code, §§ 664/484) and was ordered imprisoned in Los Angeles County jail for a period of three months. The information also alleged and appellant admitted the truth of two prior felony convictions; one for burglary and one for the unlawful taking of a vehicle. (Pen. Code, § 459; Veh. Code, § 10851.)

It was maintained by the defense through appellant's testimony that after his car had run out of gasoline he had been accosted by Ward near the garbage can, that he was never on Ward's property and that he was otherwise innocent of wrongdoing.

■ The sole contention on appeal is that the trial court committed reversible error when it allowed the prosecutor to ask appellant if he had ever been convicted of a felony involving the trait of honesty, with no other description of appellant's priors. We find the contention meritorious in view of the decision in *People* v. *Rollo* (1977) 20 Cal.3d 109 [141 Cal.Rptr. 177, 569 P.2d 771], but are likewise persuaded the error was not prejudicial. Accordingly, we affirm the judgment of conviction.

In *Rollo* the defendant was convicted of receiving stolen property. The information there alleged he had previously been convicted of soliciting another to commit murder. The prosecution sought to introduce the conviction as impeachment, but was instead permitted only to inquire whether Rollo had been convicted of a felony, without specifying its nature, while the defense was offered the opportunity to "straighten

out" the matter on redirect examination if it chose. Holding this procedure to constitute error, our Supreme Court observed that: "[t]he trial court adopted the novel procedure of permitting the prosecutor to use defendant's prior conviction for the purpose of impeachment without revealing to the jury the identity of the crime. We do not doubt the court was honestly of the opinion that its ruling struck an even balance between the competing interests of prosecution and defense. As will appear, however, the evenhandedness of the procedure is an illusion and the scales remain sharply weighted against the defendant.

"The device adopted by the trial court has at least two obvious defects. First, it frustrates a prime function of the jury. No one denies that different felonies have different degrees of probative value on the issue of credibility. Some, such as perjury, are intimately connected with that issue; others, such as robbery and burglary, are somewhat less relevant; and '"Acts of violence...generally have little or no direct bearing on honesty and veracity."' (*People* v. *Beagle, supra*, at p. 453 of 6 Cal.3d [99 Cal.Rptr. 313, 492 P.2d 1], quoting from *Gordon* v. *United States* (D.C.Cir. 1967) 383 F.2d 936, 940 [127 App.D.C. 343] (per Burger, J.).) Indeed, this premise is implicit in the requirement of our decisions that the trial court weigh the probative effect of each proffered conviction against its risk of prejudice 'under the unique facts of the particular case.' (*People* v. *Rist, supra*, at p.221 of 16 Cal.3d.)

"The final arbiter of the probative effect of such a conviction, however, is the jury: it is that body which is called upon to determine the credibility of the defendant who testifies in his own behalf, and one of the ingredients of its decision-making process will be the degree of persuasiveness it finds in the prior conviction. But precisely because that degree varies widely according to the nature of the crime, the fact which is here withheld from the jury—the identity of the prior felony—is essential to the conduct of its deliberations. The jury manifestly cannot *weigh* the probative value of the defendant's particular prior offense unless it knows what that offense was. To tell the jurors only that the defendant has been convicted of 'a felony' is therefore to furnish them with a largely meaningless fragment of information.

"Secondly, although the trial court professed concern for the prejudicial effect of the prior conviction on defendant's right to a fair trial, half a cure in these circumstances is no cure at all and may even be worse than the disease. It is true that to permit the conviction to be

used without disclosing its nature forestalls any *direct* prejudice flowing from the latter. But in so doing the procedure removes one risk of harm only to create a number of others equally grave.

"To begin with, it is highly unlikely that a jury which is advised only that the defendant has been convicted of 'a felony' will let the matter rest. Normal human curiosity will inevitably lead to brisk speculation on the nature of that conviction, and the range of such speculation will be limited solely by the imaginations of the individual jurors. Some may assume, for example, that the defendant's prior conviction was similar to or identical with the charge for which he is on trial. Others may speculate that the conviction involved some form of unspeakable conduct, such as torture murder, gang rape, or child molestation. Why else, the jurors might naturally ask, was the name of the crime withheld from them?

"Because a conviction thus 'expurgated' is of so little assistance in determining credibility, still other jurors may give up the effort and simply draw the improper inference that the conviction 'at least' shows the defendant has a criminal disposition. Finally, even conscientious jurors may be misled to the defendant's prejudice: given the circumstances and the instructions under which this evidence is presented to them, such jurors may well speculate that the conviction was for an offense especially damaging to the defendant's credibility, such as perjury. Why else, they might wonder, were they told of its occurrence? The problem, of course, is that when both are expurgated in this fashion a conviction of aggravated assault committed in a drunken rage—the probative value of which is nil—has exactly the same appearance to a jury as a perjury conviction." (Fn. omitted.) (*Id.*, 20 Cal.3d at pp. 118-119.)

It is maintained here that having alluded to appellant's priors in terms referable to honesty, the objections expressed in *Rollo* are satisfied. (Cf. *People* v. *Moultrie* (1979) 99 Cal.App.3d 77 [160 Cal.Rptr. 51].) We disagree. While accepting that the current version of partial disclosure removes from the range of the jury's speculation various forms of "unspeakable conduct, such as torture murder, gang rape, or child molestation" it is yet the case the trier of fact could well imagine "that the (appellant's) prior conviction(s) (were) similar to or identical with the charge for which he (was) on trial" or that the convictions were "for an offense especially damaging to the (appellant's) credibility, such as perjury." (*People* v. *Rollo, supra*, 20 Cal.3d 109, 119.) Accord-

ingly, the attempted compromise, withholding from the jury the specific nature, but not the fact, of the prior convictions, cannot be sustained. (See *People* v. *Fries* (1979) 24 Cal.3d 222, 235 [155 Cal.Rptr. 194, 594 P.2d 19] (dis. opn.).)

Nor does the fact appellant was offered the opportunity to clarify the question by himself disclosing the precise nature of his former crimes alter this conclusion, since we are likewise persuaded those crimes, each of which essentially involved theft, could have been permitted to be identified, if at all, only upon the basis on an extraordinary showing, not present in the record before us, that their probative value outweighed their clearly prejudicial character. (See *People* v. *Fries, supra,* 24 Cal.3d 222; *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833].)[1] In such a setting "[t]he procedure adopted by the trial court gives the defendant the archetypal Hobson's choice of (1) remaining silent on the point and subjecting himself to the foregoing improper speculation by the jury, or (2) divulging the nature of his prior conviction and incurring an equally grave risk that the jury will draw an impermissible inference of guilt." (*People* v. *Rollo, supra,* 20 Cal.3d 109, 120.)

Nevertheless, as in *Rollo,* we conclude it is not reasonably probable a result more favorable to appellant would have been reached in the absence of the trial court's error (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]) and that the error was therefore not prejudicial. In our view, if appellant's version of the matter were to be accepted it was necessary for the jury to be persuaded he was an innocent *third* party, one involved in addition to a real intruder on Ward's premises. Thus, there were present in Ward's yard blood stains, a breaker bar, a damaged lock and spent shell casings which, even if they were not established as being related to appellant except by Ward's testimony,[2] had to be accounted for in some fashion. Similarly, Ward's roommate testified respecting the altercation on the premises that:

---

[1]By this we mean that while it may be true such an election would not be objectionable where the priors properly could have been identified but were not, out of a misplaced zeal by the trial court to avoid prejudice to a defendant (as in an instance where in a prosecution like that present here the former conviction was based on fraud, but where it is inquired into only as a crime involving dishonesty), it cannot be forced upon a defendant when that is not the case.

[2]No tests were conducted with respect to the blood and those which were carried out for fingerprints on the bar produced negative results.

"A.  I was awakened by the noise.

"Q.  Where were you when you were awakened?

"A.  In his mother's apartment.

"Q.  Is that on Eagle Rock Boulevard?

"A.  Right, it's on the same location.

"Q.  You say you heard some noise?

"A.  Right.

"Q.  What kind of noise are you talking about?

"A.  Loud voices and shooting, shots.

"Q.  Were you aware at the time you woke up that Mr. Ward was surveilling his place of business that evening?

"A.  Yes, yes, I was.

"Q.  Were you aware that he'd suffered some losses there?

"A.  Yes.

"Q.  Okay. Now, what did you do when you heard these noises?

"A.  I grabbed my bathrobe and I ran out.

"Q.  And what did you discover had happened?

"A.  I discovered that the fellow had come in and he had shot him, you know, and was trying to get him, you know, holding the gun on him.

"Q.  Did you get this information from Mr. Ward?

"A.  Right.

"Q.  Where was he when he was telling you this?

"A.   He was holding the gun on the guy that was hiding and telling him to come out.

"Q.   Do you remember where he was physically, where Mr. Ward was when he was telling you this?

"A.   He was on the aviary.

"Q.   Above the ground somewhat?

"A.   Right.

"Q.   And after he explained to you what had happened, what did you do?

"A.   He asked me to hold the gun while he went down, and then I handed him the gun.

"Q.   Did he tell you at that point where he believed this suspect was?

"A.   Yes, he told me where he was.

"Q.   And then what happened?

"A.   Then he went down and out the gate. And I handed him the gun.

"Q.   Did you have to reach down some way or another to hand him the gun?

"A.   Yes.

"Q.   And then what did you do after that?

"A.   I went down and I helped the defendant in. I assisted him in walking in.

"Q.   That's the man at the far end of counsel table?

"A.   Right.

"Q.   Where was he when you first saw him that evening?

"A.   He was hiding behind the trash can, or trash bin, whatever you want to call it."

From this it would seem clear that in order for appellant to have been accosted as he claimed he was, Ward would have had to fire at two people from his property or shoot appellant within the short time after he left his roommate. With or without appellant's impeachment, such a version would have strained the credulity of a rational trier of fact in such fashion as to render the improper references to appellant's previous convictions of little consequence.

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 12, 1980. Bird, C. J., was of the opinion that the petition should be granted.