Opinion
BROUSSARD, J.
Defendant appeals from a judgment of conviction after a jury found him guilty of theft and unlawful driving or taking of a vehicle. (Veh. Code, § 10851.) Defendant was acquitted of the charge of receiving stolen property. (Pen. Code, § 496.) The prosecutor also charged two prior felony convictions for the purpose of sentence enhancement (Pen. Code, § 667.5, subd. (b)), and to preclude probation (Pen. Code, § 1203, subd. (e)(4)). These were admitted by the defendant.
The primary issue in this appeal is whether the trial court erred in ruling that if the defendant testified, he could be impeached by the prosecutor asking whether defendant had ever been convicted of a “felony involving theft.” This is but the latest twist involving the propriety of admitting prior felony convictions for the purpose of impeachment. We conclude that where similar offenses are involved, the technique of “sanitizing” the prior felony is ineffective to dispel the prejudice in admitting evidence of the prior conviction. Therefore, the procedure is unacceptable, and the trial court erred in permitting it.[1]
*121 On May 29, 1980, about 8:30 p.m., Deputy Sheriff Bennallack received a report that a man was lying in the front seat of a vehicle parked in the northwest corner of the otherwise empty Rubidoux courthouse parking lot. Bennallack went to the location and discovered defendant in a 1969 Datsun. Bennallack attempted to awaken defendant by calling to him and shaking the vehicle. After several unsuccessful attempts, he was able to unlock the vehicle and shake defendant awake.
Bennallack asked defendant his name and what he was doing in the area. Defendant stated that he was waiting for a friend, got tired, pulled the vehicle over and went to sleep. He told the officer that the car belonged to a friend, but he could not provide the friend’s name. Defendant identified himself as “Steven Johnson,” but he did not produce any identification.
Bennallack returned to his patrol car to check the ownership of the Datsun. Unsure of the correct spelling of “Johnson,” the officer returned to the Datsun and asked defendant for the correct spelling of his last name. Defendant replied “B-A-R-R-I-C-K. ” Bennallack smelled alcohol on defendant’s breath and asked if he had been drinking. Defendant replied that he had consumed some beers and marijuana at a party earlier in the evening. Defendant thought that the marijuana had been “sprayed with something.”
Bennallack returned to his vehicle and learned that the Datsun was stolen. The owner had reported the theft in the morning that same day. Defendant was arrested, advised of his Miranda[2] rights, and placed in custody.
A defense witness testified that defendant had been at a party earlier in the evening, where he had consumed beer and marijuana mixed with PCP. The witness testified that he observed defendant getting very intoxicated, and that defendant left the party about 5:30 or 6 p.m., stumbling down the street. Defendant’s brother testified that their mother’s house, where defendant stayed occasionally, was within eyesight of the parking lot where defendant was found. Testimony from prosecution witnesses revealed that a different ignition switch and toggle switch had been installed in the vehicle and the locked gas cap was bent. Defendant’s wallet was found beneath the driver’s seat.
*122 Before trial, defense counsel made a motion to prohibit the prosecutor from impeaching defendant with a prior felony conviction of automobile theft. (People v. Beagle (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].) The trial court recognized the potential prejudice in telling the jury that defendant had been previously convicted of automobile theft. In an attempt to avoid that prejudice, the court ruled that should the defendant testify, the prosecutor could ask him if he had ever been convicted of “a felony involving theft.” At that point, defense counsel indicated that he would advise his client not to testify.
We granted a hearing to consider the propriety of impeaching a defendant by a “sanitized” reference to a prior conviction as a “felony involving theft.”
We begin by examining the statutory authorization for allowing impeachment by prior felony convictions, and the statutory and judicial limitations on that authority. Evidence Code section 788 provides in pertinent part that “[f]or the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . .” (Italics added.) This authorization of judicial discretion is tempered, however, by Evidence Code section 352, which permits the trial judge to exclude otherwise admissible evidence “if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . .” We first examined the relationship between these sections in People v. Beagle, supra, 6 Cal.3d 441, where we held that read together, sections 788 and 352 “clearly provide discretion to the trial judge to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice. ” (Id., at p. 453.) This court adopted the discussion by Judge (now Chief Justice) Burger in Gordon v. United States (D.C. Cir. 1967) 383 F.2d 936, identifying some of the more important factors for the trial court to consider in exercising its discretion whether to allow evidence of the prior felony conviction for the purpose of impeachment: “ ‘In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man’s honesty and integrity. Acts of violence . . . generally have little or no direct bearing on honesty and veracity. A “rule of thumb” thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not. . . . The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life, should generally be excluded on the ground of remoteness. [Par.] A special and even more difficult problem arises when the prior conviction is for the same or substantially similar conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay *123 jurors to believe “if he did it before he probably did so this time.” As a general guide, those convictions which are for the same crime should be admitted sparingly. . . . [Par.] .... One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. Even though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant’s version of the case than to have the defendant remain silent out of fear of impeachment. ’ ” (People v. Beagle, supra, 6 Cal.3d at p. 453, fns. and citations omitted.) Beagle was premised on the thesis that the Legislature did not intend to “ ‘exempt section 788 from the general evidentiary provisions [of Division 3 of the Evidence Code] applicable to all rules of admissibility.’ (People v. Beagle, supra, 6 Cal.3d atp. 453.)” (People v. Woodard (1979) 23 Cal.3d 329, 336, fn. 4 [152 Cal.Rptr. 536, 590 P.2d 391].) These general evidentiary provisions declare that only “relevant evidence” is admissible in a court proceeding. (Evid. Code, §§ 300, 350.) Before admitting evidence of the prior felony conviction, courts have the duty to determine whether the proffered evidence has “any tendency in reason to prove or disprove” (Evid. Code, § 210) the defendant’s credibility. (People v. Woodard, supra, at p. 336, fn. 4.)
Evidence Code section 786 provides that the sole trait relevant to the witness’ credibility is truthfulness: “Evidence of traits of his character other than honesty or veracity, or their opposites, is inadmissible to attack or support the credibility of a witness.” (Evid. Code, § 786.) Thus, if a prior felony conviction does not reflect on the trait of truthfulness, it must be excluded as irrelevant under Evidence Code section 350, which provides that “[n]o evidence is admissible except relevant evidence.” (People v. Woodard, supra, at p. 335.) However, not all felony convictions reflecting on the truthfulness of the defendant are equally probative of that issue. “[Different felonies have different degrees of probative value on the issue of credibility. Some, such as perjury, are intimately connected with that issue; others, such as robbery and burglary, are somewhat less relevant; ...” (People v. Rollo (1977) 20 Cal.3d 109, 118 [141 Cal.Rptr. 177, 569 P.2d 771].) Thus, even when a prior conviction is conceded to adversely reflect on the defendant’s honesty, the court, when ruling on the Beagle motion, must make an initial determination as to the “degree of probative value” that the prior conviction has on the question of the defendant’s honesty or veracity.
The initial determination regarding the probative value of the prior felony conviction is made by examining the elements of the offense itself. Unless the conviction contains an element reflecting on defendant’s honesty, it may not be admitted. “Only a conviction which has as a necessary element an intent to deceive, defraud, lie, steal, etc., impacts on the credibility of a *124 witness.” (People v. Spearman (1979) 25 Cal.3d 107, 115 [157 Cal.Rptr. 883, 599 P.2d 74].) It is not sufficient that the prior offense shows a “disrespect for law” or a “character trait of willingness to do anything.” (People v. Rollo, supra, 20 Cal.3d at p. 117, italics omitted.) Some theft offenses, such as robbery, contain elements that are both larcenous and assaultive, and thus bear only in part on the individual’s veracity. (People v. Rist (1976) 16 Cal.3d 211, 220 [127 Cal.Rptr. 457, 545 P.2d 833].) Hence, such offenses are entitled to somewhat less weight in the balancing process. (People v. Fries (1979) 24 Cal.3d 222, 229 [155 Cal.Rptr. 194, 594 P.2d 19].) However, the mere removal of the noncredibility aspects of certain theft offenses does not increase the probative value of the credibility-bearing elements of the offense. “Even those elements of a robbery conviction which do reflect on a witness’ credibility are less probative of that issue than the elements of other convictions, such as perjury. Thus, while a robbery or other theft conviction may be relevant to credibility, it is entitled to less weight in the Beagle balancing process than such other offenses.” (People v. Fries, supra, at pp. 229-230, fn. 7.)
Thus, we see that it is the obligation of the trial judge to make an initial determination whether the prior felony conviction is sufficiently probative of the question of credibility for the jury to consider it in assessing the truthfulness of tire defendant. This is but the threshold question in the balancing test required by Beagle and its progeny. Of course, once this determination is made, and assuming that the remaining conditions to admissibility are satisfied, it is for the jury to make the final determination to what extent the prior conviction affects credibility in a particular case.
In People v. Rollo, supra, 20 Cal.3d 109, defendant, who was charged with receiving stolen property, had previously been convicted of soliciting another to commit murder. The trial court permitted impeachment of the defendant by allowing the prosecutor to ask defendant if he had ever been convicted of a felony, without revealing the nature of the prior conviction. We found this attempt to lessen the prejudicial effect of the prior conviction ineffective because, although it removed the direct prejudice caused by identifying the prior crime, it created other risks of harm equally severe. First, the technique of not identifying the prior crime “frustrates a prime function of the jury.” (Id., at p. 118.) That function is to make a final determination as to the credibility of the witness. One of the factors that the jury considers in assessing that credibility is the persuasiveness of the prior conviction. Although the trial judge must make an initial determination as to the probative value of the prior conviction, the jury cannot weigh the probative value of the particular prior conviction if it is deprived of knowledge of the identity of that crime.
Another problem caused by not revealing the prior conviction is that stating only that the defendant has been convicted of “a felony” will arouse the jury’s *125 curiosity about the identity of the prior offense: “Normal human curiosity will inevitably lead to brisk speculation on the nature of that conviction, and the range of such speculation will be limited solely by the imaginations of the individual jurors.” (People v. Rollo, supra, at p. 119.)
The second factor for the trial court to consider is the nearness or remoteness in time of the prior felony conviction. Courts have approved admission of felonies four years old (People v. Lassell (1980) 108 Cal.App.3d 720 [166 Cal.Rptr. 678]), five years old (People v. James (1978) 88 Cal.App.3d 150 [151 Cal.Rptr. 354]), and six years old (People v. Boothe (1977) 65 Cal.App.3d 685 [135 Cal.Rptr. 570], disapproved on another point in People v. Brigham (1979) 25 Cal.3d 283, 292 [157 Cal.Rptr. 905, 599 P.2d 100]), as not being so remote as to require exclusion. In this case, the prior conviction occurred two years prior to the trial. Thus, this factor would point toward admissibility of the prior felony conviction.
The third factor to be assessed in applying the balancing formula, crucial to the determination in this case, is the “ ‘special and even more difficult problem [that] arises when the prior conviction is for the same or substantially similar conduct for which the accused is on trial. ’ ” (People v. Beagle, supra, 6 Cal.3d at p. 453.) This problem arises when the witness whose testimony is sought to be impeached is also the defendant. In such a case, the trial court must exercise extreme caution in assessing the potential prejudice because “[s]uch circumstances present a unique risk of undue prejudice and confusion of issues. Despite limiting instructions, the jury is likely to consider this evidence for the improper purpose of determining whether the accused is the type of person who could engage in criminal activity. This is particularly likely where the prior conviction is for the same crime as that which forms the basis of the charges against defendant. [Citing Beagle, supra, at p. 453.] The probability of such misuse also increases where the prosecution’s case is weak. (Jefferson, Cal. Evidence Benchbook (1972) Special Problems Related to Relevancy, § 22.2, p. 297.) In these circumstances, only the most disciplined minds would be able to restrict their use of the prior felony evidence to assessing the defendant’s credibility as a witness and disregard its obvious implications with respect to his tendencies in the area of unlawful conduct.” (People v. Antick (1975) 15 Cal.3d 79, 97 [123 Cal.Rptr. 475, 539 P.2d 43].)
Moreover, “[t]here is also the ‘obvious danger’ that the jury will decide that based on his prior convictions, the accused ‘ought to be put away without too much concern with present guilt.’ (McCormick, [Evidence (2d ed. 1972)] § 43, p. 89.) Further, the admission of prior convictions often confuses the issues at trial and ‘draw[s] [the jurors’] minds away from the real issue’ of guilt or innocence. (Boyd v. United States (1892) 142 U.S. 450, 458 [35 L.Ed. 1077, *126 1080, 12 S.Ct. 292]; see also People v. Antick, supra, 15 Cal.3d at p. 97.)” (People v. Fries, supra, 24 Cal.3d at p. 228.)
A strict limitation on the admission of similar prior convictions is thus necessary because “[w]hile the risk of undue prejudice is substantial when any prior conviction is used to impeach the credibility of a defendant-witness, it is far greater when the prior conviction is similar or identical to the crime charged. [Citations.]” (People v. Fries, supra, 24 Cal.3d at p. 230.) “A jury which is made aware of a similar prior conviction will inevitably feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged.” (People v. Rist, supra, 16 Cal.3d at p. 219.)
In Rist we found the admission of a similar prior conviction to be an abuse of discretion when there were dissimilar prior convictions available for the purpose of impeachment. This court did not, however, imply that a similar or identical conviction should be admitted merely because no dissimilar prior conviction is available to impeach credibility. (People v. Fries, supra, 24 Cal.3d at p. 230.)
In People v. Fries, supra, 24 Cal.3d 222, defendant was charged with robbery. The trial court denied defendant’s motion to exclude evidence of his prior robbery conviction. We reversed the conviction, holding that the trial court erred in permitting the defendant to be impeached by use of a prior identical felony conviction. Thus, the rule emerges that identical prior offenses may not be used; similar prior convictions should only be used sparingly.
In People v. Betts (1980) 110 Cal.App.3d 225 [167 Cal.Rptr. 768], the trial court attempted to “sanitize” the prior conviction by allowing the prosecutor to ask the defendant if he had ever been convicted of a felony involving the trait of honesty. In concluding that the trial court erred in allowing the question, the Court of Appeal relied on Rollo, supra, 20 Cal.3d 109, noting that although some speculation is removed, “it is yet the case the trier of fact could well imagine ‘that the [appellant’s] prior conviction[s] [were] similar to or identical with the charge for which he [was] on trial’ . . . .” (People v. Betts, supra, at p. 230.)
The Attorney General relies on People v. Moultrie (1979) 99 Cal.App.3d 77 [160 Cal.Rptr. 51], and People v. Madaris (1981) 122 Cal.App.3d 234 [175 Cal.Rptr. 869], as support for the procedure used by the trial court to “sanitize” the prior conviction in this case. In Moultrie, defendant was charged with robbery. The trial court denied defendant’s Beagle motion to disallow evidence of his prior attempted robbery conviction, but the trial court only allowed the prosecutor to ask the defendant, if he testified: “Have you ever been convicted of a felony involving theft?” The Court of Appeal sustained this *127 procedure as an acceptable method of introducing the prior conviction without prejudicing defendant, and as striking a fair and reasonable balance between the effect of a defendant not testifying out of fear of being prejudiced because of impeachment by a prior conviction and clothing him with “a false aura of veracity.” (99 Cal.App.3d at p. 86.)
In our view, the method used in this case, and approved in Moultrie and Madaris, does not avoid the prejudice warned against in Rollo and Fries, and despite the facile evenhandedness, “the scales remain sharply weighted against the defendant. ” (People v. Rollo, supra, 20 Cal.3d at p. 118.)
The effort to “sanitize” the prior auto theft conviction as a “felony involving theft” was an attempt to tread between the pitfalls of identifying the prior conviction as an offense similar or identical to the charged offense (see People v. Fries, supra, 24 Cal.3d 222), and not identifying the felony at all. (See People v. Rollo, supra, 20 Cal.3d 109.) We conclude that the technique, while having a superficial appeal as an acceptable accommodation of the competing interests of the prosecution and the defense, does not avoid creating a “substantial danger of undue prejudice. ” (Evid. Code, § 352.) Although the partial identification in this case would forestall the possibility that the jury would assume that the undisclosed prior offense was heinous (see People v. Rollo, supra, 20 Cal.3d at p. 119), the technique only increased the possibility that the jury would assume that the undisclosed prior offense was indeed identical to the crime charged. Why else, when defendant is charged with a theft-type offense, reveal that he had previously been convicted of a felony involving theft? The flaw in the procedure is that it not only does not remove the speculation warned against in Rollo, supra, but it in fact tends to focus the speculation toward the conclusion that the prior crime was identical, which inevitably leads to the improper presumption that “if he did it once, he will do it again.”
Indeed, the procedure whereby the jury is suggestively led to speculate that the prior offense was similar to the one charged may be as detrimental to the fact-finding process as explicitly identifying the prior crime as identical to the current charged offense. For these reasons, we disapprove People v. Moultrie, supra, 99 Cal.App.3d 77, and People v. Madaris, supra, 122 Cal.App.3d 234, to the extent that they are inconsistent with the views herein expressed.
Even were we to conclude that the technique used by the trial court is a generally acceptable method of revealing the credibility-bearing aspect of the prior conviction without creating the substantial danger of undue prejudice, we cannot sanction the approach in this case. Although “sanitized,” the prior conviction closely resembled the offense for which the defendant was on trial. There is no doubt that defendant’s conviction of auto theft is similar to the charged offense of violating Vehicle Code section 10851 (theft and unlawful *128 driving or taking of a vehicle). Indeed, “Vehicle Code section 10851 is a lesser included offense of Penal Code section 487, subdivision 3, grand theft, auto. [Citations.]” (People v. Buss (1980) 102 Cal.App.3d 781, 784 [162 Cal.Rptr. 515].) In Buss, the Court of Appeal reversed a conviction of violating Vehicle Code section 10851 after the trial court denied defendant’s Beagle motion to exclude a prior out-of-state felony conviction of auto theft. For purposes of balancing the probative value against creating a substantial risk of undue prejudice, we find no distinction in the fact that the prosecutor in this case would have excluded the word “auto” in referring to the prior “theft.”
The instruction given in this case describing the elements of a violation of Vehicle Code section 10851 differ from the instructions given in a case charging violation of Penal Code section 487, subdivision 3, only in that the latter offense requires a specific intent to permanently deprive the owner of his or her property.[3] From the jury’s point of view, the offense charged in this case is nearly identical to, if not the equivalent of, the charge of auto theft. The jury would, in all likelihood, consider the charged offense to be a “theft.” Thus, there can be no lessening of the prejudicial effect in describing a prior conviction as a “felony involving theft” when defendant is charged with the similar offense of “theft and unlawful driving or taking of a vehicle.”
*129 Finally, Beagle teaches that the trial court must also consider in the balancing equation the effect if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. (People v. Beagle, supra, 6 Cal.3d at p. 453.) We have previously noted that even if the first three factors suggest admissibility of the prior conviction, the trial judge may nevertheless decide that it is “ more important that the jury have the benefit of defendant’s version of the case than to have the defendant remain silent out of fear of impeachment.’ ” (Ibid.)
Several reasons compel this heightened significance of the fourth factor. Like the third factor, this one becomes particularly important when the witness whose testimony is sought to be impeached is also the defendant. In such a case, the loss of the defendant’s testimony will undoubtedly have a greater impact on the fact-finding process than would the failure to testify of a nondefendant witness. The threat of impeachment by a prior felony conviction has significant coercive force when the witness’ liberty is at stake.
In addition, the defendant’s constrained silence has a detrimental impact on our criminal justice system. When “the accused elects not to testify in order to keep the evidence of prior convictions from the jury, the jury is deprived of competent, probative evidence—the testimony of the accused. For example, an accused’s testimony might be necessary to give a complete picture of the events, since he may be the sole witness or the defense witness with the most complete knowledge of the events underlying the charges. If a specific intent crime is involved, or if defenses of diminished capacity, unconsciousness or insanity are proffered, an accused’s testimony may well be the most direct evidence of his mental state. Further, his testimony may add weight and credibility to testimony of other witnesses that may otherwise appear to the jury to be unconvincing or suspect.” (People v. Fries, supra, 24 Cal.3d at p. 228.)
Third, despite limiting instructions, the defendant’s silence caused by the threat of impeachment by prior convictions may itself tend to prejudice the defendant. “An accused’s failure to testify may itself be misperceived by the jury, since ‘his silence alone will prompt the jury to believe him guilty.’ (McCormick [Evidence (2d ed. 1972)], supra, § 43, p. 89.) The jury ‘will expect the defendant to present all the evidence he can to escape conviction, and it will naturally infer that his failure to explain or deny evidence against him when the facts are peculiarly within his knowledge arises from his inability to do so. “Such an inference is natural and irresistible. It will be drawn by honest jurymen, and no instruction will prevent it.” [Citation.]’ (People v. Modesto (1965) 62 Cal.2d 436, 452 [42 Cal.Rptr. 417, 398 P.2d 753].) [Fn. omitted.]” (People v. Fries, supra, 24 Cal.3d at pp. 228-229.)
*130 Finally, if the trial court errs in admitting the prior felony conviction and the defendant does not testify, it is extremely difficult for an appellate court to measure the impact that defendant’s testimony might have had. (People v. Fries, supra, at p. 228.)
Our holding that the prejudicial effect of the “sanitized” prior conviction outweighs its probative value does not mean that we are encouraging “a form of blackmail by defendants” or permitting the defendant to be clothed with “a false aura of veracity.” (People v. Beagle, supra, 6 Cal.3d at p. 453.) “The exclusion of a prior conviction to impeach credibility does not prevent a prosecutor from subjecting a defendant-witness to piercing cross-examination, ‘the greatest legal engine ever invented for the discovery of truth.’ (5 Wigmore, Evidence (Chadbourn rev. ed. 1974) § 1367, p. 32.) Through cross-examination, the prosecutor can raise doubts as to the general truthfulness of the witness and question the credibility of his version of the facts. Also, the defendant’s memory and capacity for observation can be challenged. Prior inconsistent statements may be used to impeach credibility.” (People v. Fries, supra, 24 Cal.3d at p. 231.)
Because we agree with defendant’s assertion that the trial court erred in allowing defendant, if he testified, to be impeached by a “sanitized” felony conviction, we do not address the claim that permitting impeachment pursuant to Evidence Code section 788 violates a defendant’s constitutional right to testify in his or her own defense, or otherwise violates due process.
Having concluded that the trial court erred in denying defendant’s motion to exclude evidence of his prior conviction as “sanitized,” we must determine whether this error affected the judgment so as to require reversal. The evidence supporting the conviction was largely circumstantial. Defendant was found asleep in a recently stolen automobile. The record reveals that following the ruling on the Beagle motion, the attorney for the defendant advised him not to testify. This court has no way of knowing what defendant’s testimony would have been, thus, we have no basis for concluding that such testimony would not have affected the result. “ ‘[Errors at a trial that deprive a litigant of the opportunity to present his version of the case . . . are . . . ordinarily reversible, since there is no way of evaluating whether or not they affected the judgment. ’ (Traynor, [The Riddle of Harmless Error (1970)] at p. 68.) A conviction under such circumstances is a ‘miscarriage of justice’ within the meaning of article VI, section 13 of the California Constitution. (See People v. Watson [(1956)] 46 Cal.2d [818, 836,] 837 [299 P.2d 243]; People v. Gainer (1977) 19 Cal.3d 835, 855 [139 Cal.Rptr. 861, 566 P.2d 997]; People v. Fries, supra, 24 Cal.3d at pp. 233-234.)” (People v. Spearman, supra, 25 Cal.3d at p. 119.)
*131 Several subsidiary issues require our discussion. First, defendant claims that the trial court erred in ruling inadmissible his exculpatory statements made to the officer after defendant was arrested and Mirandized. On direct examination, Officer Bennallack testified that when he woke the defendant, he told Bennallack that he was waiting for a friend, got tired and pulled the vehicle over. On cross-examination, defendant’s counsel attempted to elicit testimony Bennallack had given at the preliminary examination. That testimony was that immediately after he was arrested and waived his Miranda rights, defendant told the officer that he did not know how he got in the automobile or to the location, and that all he could remember was that he had been to a party in Riverside. The trial court sustained the prosecutor’s objection, concluding that the line of testimony went beyond the scope of direct examination, was exculpatory, and did not aid in understanding defendant’s prearrest statements.
Defendant asserts that the statement was connected with his prearrest statements to rebut, qualify, and explain them under Evidence Code section 356. That statute provides: “Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence.”
The postarrest statement would thus be admissible if it were part of the same conversation that took place before his arrest.[4] Reception of such evidence is not barred by the hearsay rule. “ ‘In the event a statement admitted in evidence constitutes part of a conversation . . ., the opponent is entitled to have placed in evidence all that was said ... by ... the declarant in the course of such conversation . . ., provided the other statements have some bearing upon, or connection with, the admission or declaration in evidence and are not excluded by a rule of law other than the hearsay rule. ’ ” (Rosenberg v. Wittenborn (1960) 178 Cal.App.2d 846, 852 [3 Cal.Rptr. 459], italics added; People v. Williams (1975) 13 Cal.3d 559, 565 [119 Cal.Rptr. 210, 531 P.2d 778].)
Although defendant’s postarrest and prearrest statements both served the same purpose—they explain his presence in the automobile—they were separated by a series of events. Defendant identified himself as Steven Johnson and the officer went to his patrol car to check the ownership of the Datsun. Officer Bennallack then returned to defendant to obtain the proper spelling of his last name, and smelled alcohol on defendant’s breath. The officer learned that defendant’s name was Barrick and that he had been drinking and smoking mari *132 juana. Bennallack returned to his patrol car, learned that the Datsun was stolen, and then returned again to defendant and arrested him. It was only after these events and the admonishment of his rights that defendant volunteered the latter statement.
The act of advising defendant of his constitutional rights in particular is intended to give a defendant pause, to cause him to reflect on his situation and, recognizing that anything he says can be used against him, to remain silent or to speak with care. Whatever defendant said after the delay in arrest and after having been warned of his rights thus is not simply a continuation of the prior conversation, but a distinct and separate interrogation. We therefore conclude that the trial court did not err in excluding defendant’s postarrest statement.
Defendant also claims that the trial court erred in refusing to instruct on the defense of unconsciousness by involuntary intoxication.[5] As we noted earlier, the arresting offier had to rouse defendant from a sound sleep allegedly induced by defendant’s consumption of beer and marijuana mixed with PCP. Defendant suggests that although he voluntarily consumed the beer and marijuana, he unknowingly consumed the PCP that had been mixed with the marijuana, causing him to become “unconscious” at the time and place of commission of the alleged offense.
The court must give a requested instruction only if the defendant proffers evidence sufficient to “deserve consideration by the jury, i.e., ‘evidence from which a jury composed of reasonable men could have concluded’ ” that the particular facts underlying the instruction did exist. (People v. Flannel (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1], quoting from People v. Carr (1972) 8 Cal.3d 287, 294 [104 Cal.Rptr. 705, 502 P.2d 513].) There was no direct evidence indicating unconsciousness of the defendant at the time and place of the charged offense. Moreover, there was no evidence from which the jury could reasonably infer that defendant was unconscious at the time of the charged crime. Thus, we conclude that there was no error in failing to instruct according to CALJIC No. 4.30.
*133 In addition, the jury was instructed according to CALJIC No. 4.21,[6] to the effect that “[i]f the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had . . . [the] specific intent [to deprive the owner of her title to or possession of her vehicle].” By finding defendant guilty of the charged offense, the jury necessarily rejected defendant’s claim that he was unconscious due to intoxication.
Finally, defendant urges that the trial court erred in refusing to instruct the jury on the asserted lesser included offense of joyriding in violation of Penal Code section 499b. Generally, two tests are used to determine whether in a particular case a crime is a necessarily and lesser included offense of another crime. The first test looks to the elements of the crime: if, as a matter of legal definition, the greater offense cannot be committed without concomitantly satisfying the elements of the lesser offense, the latter offense is a necessarily lesser included offense. Secondly, a crime is a necessarily lesser included offense if it is within the offense specifically charged in the accusatory pleading. (People v. Cannady (1972) 8 Cal.3d 379, 390 [105 Cal.Rptr. 129, 503 P.2d 585]; People v. St. Martin (1970) 1 Cal.3d 524, 536 [83 Cal.Rptr. 166, 463 P.2d 390].)
In People v. Thomas (1962) 58 Cal.2d 121, 127-130 [23 Cal.Rptr. 161, 373 P.2d 97], this court held that joyriding under Penal Code section 499b was not a necessarily lesser included offense within Vehicle Code section 10851 under the elements of the crime and the accusatory pleading filed in that case. On reexamination of the question, we conclude that Thomas correctly held that joyriding is not intrinsically a necessarily included offense within Vehicle Code section 10851. We also conclude, however, that Thomas erred in holding that the charging allegation in that case did not render joyriding a necessarily included lesser offense within the charged violation of Vehicle Code section 10851. In our opinion the pleadings in both Thomas and the present case, by accusing defendant of driving and taking a vehicle without the owner’s permission, necessarily charged both a violation of Vehicle Code section 10851 and of Penal Code section 499b.
*134 The Legislature has enacted three statutes dealing with the taking of an automobile without the owner’s consent: “grand theft-auto” (Pen. Code, § 487, subd. 3); “driving or taking a vehicle” (Veh. Code, § 10851); and “joyriding” (Pen. Code, § 499b). As we observed in People v. Thomas, supra, 58 Cal.2d 121, 125-126: “the physical conduct prohibited by the three enactments is substantially the same, but. . . there purports to be a distinction as to the intent with which the act is done in each instance. It may be presumed that the Legislature intended by these sections to deal with problems which are properly distinguishable.....The distinction ... is admittedly a subtle one, and would present a rather difficult problem if it were required that a court instruct a jury as to the distinction in a given situation.”
We are here concerned with two of these enactments, Vehicle Code section 10851 and Penal Code section 499b. The principal difference between them is that section 10851 requires a driving or taking with the specific intent to deprive the owner permanently or temporarily of title or possession of the automobile (see People v. Johnson (1961) 191 Cal.App.2d 694, 699 [13 Cal.Rptr. 1].[7] Penal Code section 499b, the joyriding statute, does not require a specific intent to deprive the owner of title or possession of a vehicle (see People v. Orona (1946) 72 Cal.App.2d 478, 484 [164 P.2d 769]; People v. Neal (1940) 40 Cal.App.2d 115, 116-119 [104 P.2d 555]).[8] However, the section does require a “purpose” or “intent” of “temporarily using or operating the same.” (People v. Bailey (1946) 72 Cal.App.2d Supp. 880, 883 [165 P.2d 558].)
Because one could conceivably “take” a vehicle in violation of section 10851 without the purpose of using or operating it in violation of section 499b, the latter is not a necessarily included offense under section 10851. (People v. Thomas, supra, 58 Cal.2d 121, 128.) As the Thomas court stated: “It is obvious that the owner of a vehicle could be deprived of possession in many ways which would not necessarily require that the offender use or operate the vehicle.” (Ibid.) Such instances would seem to be rare; but, for example, a vehicle could be towed with the specific intent to deprive the owner of possession *135 without being towed for the purpose of using or operating the vehicle. Thus, so long as the charging allegation alleges merely a taking with the intent to deprive the owner of possession, violation of section 499b is not necessarily included.
Section 10851 speaks in the alternative: a person can violate that section by driving or taking a vehicle. The acts constituting driving a vehicle and taking a vehicle are separate and distinct. (People v. Jaramillo (1976) 16 Cal.3d 752, 759, fn. 6 [129 Cal.Rptr. 306, 548 P.2d 706]; see also People v. Donnell (1975) 52 Cal.App.3d 762, 769 [125 Cal.Rptr. 310].) As we have seen, a person can take a vehicle without having the purpose of using or operating it. However, one cannot drive a vehicle without the purpose of using or operating it, because to drive an automobile is to operate it. (See'Webster’s New Internat. Diet. (3d ed. 1961) p. 692.) Thus, a complaint which charges a defendant with “driving and taking” an automobile necessarily charges that he took the automobile “for the purpose of temporarily using or operating the same” and thus violated section 499b.[9] Thus, although we agree that Thomas correctly held that Penal Code section 499b is not a necessarily included offense within Vehicle Code section 10851, we conclude that the charging allegation in this case does allege facts that necessarily include the former section within the latter.
The question remains whether the trial court erred in denying defendant’s request to instruct the jury on this issue. The trial court is obligated to give instructions on lesser included offenses that the evidence tends to prove. (People v. St. Martin, supra, 1 Cal.3d at pp. 532-533.) However, there is no obligation to instruct on a lesser included offense when there is no evidence that the offense was less than that charged. (People v. Sedeno (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913].) The Attorney General argues that because the evidence in this case showed that the ignition switch in the victim’s car had been substantially altered, a more serious offense than joyriding was shown. In our view, the evidence relating to the tampered ignition does not reflect on whether the defendant had the specific intent to deprive the owner of the possession of her car or a mere intent to use or operate the vehicle, but merely shows the method by which the automobile was taken.
We therefore hold that the trial court erred in failing to instruct on the lesser offense of violation of Penal Code section 499b. Since we have previously determined that the court committed reversible error in its ruling that evidence of defendant’s prior conviction was admissible to impeach his testimony, we need not decide whether the additional error in failing to instruct on a lesser included offense would also require reversal of the conviction.
*136 The judgment is reversed.
Bird, C. J., Mosk, J., Newman, J., and Reynoso, J., concurred.

Trials occurring after June 8,1982, may be affected by new article I, section 28, subdivision (f) of the California Constitution, passed by initiative as part of Proposition 8. That section provides in relevant part: “Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding.” Our analysis in this case does not consider the impact of that section on the law regarding the use of prior felony convictions. Briefs were filed on the issue after oral argument, and the issues are undoubtedly important. However, rather than rushing to resolve speculative questions not now before us, the *121 orderly development of the law will be better served by leaving to future cases questions regarding the validity and impact of particular sections of Proposition 8. These difficult issues should be considered in cases where the trial courts and Courts of Appeal have had an opportunity to consider the issues and add their insights, and where the issues have been orally argued before this court.
Unlike Justice Richardson’s dissent, we do not address whether defendant’s prior felony conviction would be admissible should there be a retrial.

Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

The jury was given the following instruction: “Defendant is charged in Count I of the information with the commission of the crime of violation of Section 10851 of the Vehicle Code.
“Every person who drives or takes a vehicle not his own, without the consent of the owner, and with specific intent to deprive the owner either permanently or temporarily of his title to, or possession of, the vehicle, whether with or without intent to steal the same, is guilty of the crime of violation of Section 10851 of the Vehicle Code.
“In order to prove the commission of such crime, each of the following elements must be proved:
“1. That a person took or drove away a vehicle belonging to another person,
“2. That the other person had not consented to such taking and driving away of his vehicle, and
“3. That when such person took the vehicle he had the specific intent to deprive the owner either permanently or temporarily of his title to or possession of the vehicle.” (CALJIC No. 14.36 (1979 revision.))
CALJIC No. 14.37 (1972 revision) provides, in pertinent part: “The unauthorized taking or depriving by one person of the automobile of another may, depending upon the facts, constitute either of two crimes.
“The defendant is charged in Count — with grand theft. Every person who steals, takes or drives away the automobile of another with the specific intent to deprive the owner permanently of his property is guilty of grand theft regardless of the value of the automobile.
“The defendant is charged in Count — with a violation of Section 10851 of the Vehicle Code which provides that any person who drives or takes a vehicle not his own, without the consent of the owner thereof, and with the specific intent to either permanently or temporarily deprive the owner of his title to or possession of such vehicle, is guilty of a public offense.
“The distinction between the offenses is in the type of specific intent required:
“1. To constitute the crime of grand theft there must be a specific intent to permanently deprive the owner of his property.
“2. To constitute a violation of Vehicle Code Section 10851 there must be a specific intent to either permanently or temporarily deprive the owner of his title to or possession of the vehicle. ...”

The postarrest statement would also be admissible if necessary to understand the earlier, prearrest statement, but in the present case the earlier statement is independently comprehensible.

Defendant requested CALJIC No. 4.30 (1979 revision), which reads as follows:
“A person who commits an act while unconscious is not guilty of a crime.
“This rule of law applies to persons who are not conscious of acting but who perform acts while asleep or while suffering from a delirium of fever, or because of an attack of [psycho-motor] epilepsy, a blow on the head, the involuntary taking of drugs or the involuntary consumption of intoxicating liquor, or any similar cause.
“Unconsciousness does not require that a person be incapable of movement.
“Evidence has been received which may tend to show that the defendant was unconscious at the time and place of the commission of the alleged offense for which he is here on trial. If, after a consideration of all the evidence, you have a reasonable doubt that the defendant was conscious at the time the crime was committed, he must be found not guilty.”

CALJIC No. 4.21, as modified for this case, provides: “In the crime of [the unlawful taking or driving of a vehicle] of which the defendant is accused [in Count I of the information], a necessary element is the existence in the mind of the defendant of the specific intent to [deprive the owner of her title to or possession of her vehicle].
“If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant has such specific intent.
“If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent, you must give the defendant the benefit of that doubt and find that he did not have such specific intent.”

Section 10851 provides in relevant part: “Any person who drives or takes a vehicle not his own without the consent of the owner thereof, and with intent either permanently or temporarily to deprive the owner thereof of his title to or possession of the vehicle, whether with or without intent to steal the same, or any person who is a party or accessory to or an accomplice in the driving or unauthorized taking or stealing is guilty of a public offense, and upon conviction thereof shall be punished by imprisonment in the state prison, or in the county jail for not more than one year or by a fine of not more- than five thousand dollars ($5,000) or by both such fine and imprisonment.”

Section 499b provides: “Any person who shall, without the permission of the owner thereof, take any automobile, bicycle, motorcycle, or other vehicle or motorboat or vessel, for the purpose of temporarily using or operating the same, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine not exceeding two hundred dollars ($200), or by imprisonment not exceeding three months, or by both such fine and imprisonment.”

Language to the contrary in People v. Thomas, supra, 58 Cal.2d 121, is disapproved.