[No. B006485. Second Dist., Div. Two. Oct. 1, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME ANTHONY ROGERS, Defendant and Appellant.

COUNSEL

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Carol Wendelin Pollack and Robert David Breton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROTH, P. J.**—Jerome Rogers appeals from his conviction of burglary, kidnaping, sodomy, residential robbery, and grand theft auto. He contends that his prior felony convictions should not have been available for impeachment, and that evidence of another, uncharged crime should not have been admitted. We affirm.

On February 14, 1984, Lisa K., 23 years old, went to bed in her North Hollywood apartment about 8:30 p.m. She was awakened before midnight by Rogers sitting on top of her. He was holding a butcher knife taken from her kitchen. He stuffed a red bandana into her mouth. He forced her to take off her nightgown, turned her onto her stomach and sodomized her. Afterwards he asked Lisa where her money was, whether she had any drugs, and whether she had any valuables. When Lisa uttered any sound he held the knife threateningly to her face. He found Lisa's keys and forced her to select the key which operated her car. He forced her to put on a robe and accompany him to the car. They both got into Lisa's car. Rogers drove around, looking for a freeway on-ramp so that he could drive to Los Angeles. He told Lisa to keep her eyes closed, or else he would take her somewhere to be raped by a lot of black men.

Lisa escaped from the car as it was stopped for a red light. She got into a taxi which brought her to a police car. She told the officers that she had been raped, and gave them a description of her car. She was taken to a hospital where semen samples were taken.

The police apprehended Rogers after a high speed chase. Rogers had a butcher knife, a simulated diamond ring, a gold chain, two calculators, and a pen and pencil set, all taken from Lisa's home. At trial a criminalist testified that he examined the pertinent serological evidence collected from Lisa, her robe and sheets. He compared it with the results of an analysis of Rogers' saliva and blood. He concluded that Rogers could have provided the fluids found on Lisa's bedding, and that only 4 percent of the population could have done so.

Lisa positively identified Rogers as her assailant.

Over Rogers' objection the court permitted Suzanne L. to testify. On February 14, 1984, at about 11 p.m. Suzanne was in the laundry room of her apartment building, which is one or two blocks from Lisa's apartment. Someone put his hand around her neck. He had a pocket knife in the other hand. At trial she identified Rogers as that man. He told Suzanne to lie on the floor, and to put one of her son's washed diapers in her mouth. He turned off the light in the laundry room and dragged Suzanne to her feet. He told her to undress. As Suzanne undressed she noticed that Rogers had put down the knife. She grabbed it and stabbed at Rogers in the neck and stomach areas. He pushed her against the wall and ran away in the direction of Lisa's apartment. When arrested, Rogers had a cut on the lower left side of his chest. There were rips on the left sides of both of the T-shirts he was wearing when arrested.

The court ruled preliminarily that if Rogers testified he could be impeached with three prior felony convictions, two for robbery and one for driving another person's automobile. Because of the ruling Rogers did not testify. He did not call any witnesses. In cross-examination and in his final argument he tried to cast doubt on the victims' identification of him as their attacker. The jury convicted him of all counts.

■ Rogers' first assignment of error is that the court erred in ruling that it lacked discretion to exclude his prior convictions for the purpose of impeachment.

Prior to voter ratification of Proposition 8 in June 1982, the admissibility of priors to impeach was controlled by the rules of *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], and its posterity. Proposition

8 added article I, section 28, subdivision (f) to the California Constitution: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment . . . in any criminal proceeding." This new subdivision was intended to alter the fact that "the guidelines of *Beagle* had, in fact, become rigid limitations on the discretion of the trial court" because of subsequent ossifying Supreme Court decisions. (*People* v. *Castro* (1985) 38 Cal.3d 301, 308 [211 Cal.Rptr. 719, 696 P.2d 111].) Today the only limitation on the admissibility of prior felony convictions is that due process demands relevance, which *Castro* construes as involving "moral turpitude." (*Id.*, at pp. 313-314.)

The Supreme Court however also determined that a trial court retains discretion to exclude relevant priors pursuant to Evidence Code section 352, which states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People* v. *Castro, supra,* 38 Cal.3d at pp. 312-313.) Thus, the trial court erred in its preliminary statement suggesting it doubted its power to exclude Rogers' prior convictions. Does this doubt require reversal of Rogers' conviction?

In *People* v. *Bonilla* (1985) 168 Cal.App.3d 201 [214 Cal.Rptr. 191], the court held harmless the trial court's failure to exercise its discretion to exclude a prior conviction when it thought that Proposition 8 forbade discretionary exclusion. *Bonilla* was based on the fact that the prior assault with intent to commit rape was in fact admissible upon a proper exercise of discretion, i.e., was morally turpid, and that the evidence of guilt was overwhelming. (*Id.*, at p. 205.) There is, however, an important difference between *Bonilla* and the case at bench: in the former case the defendant chose to testify. At bench Rogers declined to testify for fear of impeachment.

The Courts of Appeal are split on the significance of a defendant's failure to testify because of the risk of impeachment by prior felonies. *People* v. *Almarez* (1985) 168 Cal.App.3d 262 [214 Cal.Rptr. 105], takes the view that when the defendant does not testify, the error is reversible per se, relying on *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833]. (*People* v. *Almarez, supra,* 168 Cal.App.3d at p. 268.) The court in *People* v. *Pickett* (1985) 163 Cal.App.3d 1042 [210 Cal.Rptr. 85] also applied a "per se reversible" standard in a like situation. It determined that the evidence against Pickett was not "irrebuttable," and refused to "speculate as to the effect the defendant's testimony might have had on the jury." (*Id.*, at p. 1049.) However, the conclusion that *Rist* requires reversal

in every instance in which the defendant is silent does not in our opinion withstand analysis and is not universally accepted. Before Proposition 8 was enacted, *People* v. *Anjell* (1979) 100 Cal.App.3d 189 [160 Cal.Rptr. 669], and *People* v. *Lassell* (1980) 108 Cal.App.3d 720 [166 Cal.Rptr. 678] held that the trial court's error in permitting impeachment by priors did not warrant reversal, even though the defendants in those cases did not testify. In the post-Proposition 8 age, *People* v. *Fisher* (1984) 153 Cal.App.3d 826 [200 Cal.Rptr. 683] is in accord.

Until these discordant Court of Appeal decisions are resolved by our Supreme Court, we adopt the analysis of *People* v. *Fisher, supra:* "Unquestionably, neither *Barrick, Spearman, Fries* nor *Rist* mandates a reversal 'per se' in every case where a defendant refuses to testify after the trial court has ruled that if he testified, the prosecutor could inquire into prior similar or identical felony convictions for purposes of impeachment. [¶] In *Barrick, Spearman* and *Fries,* the Supreme Court reversed the judgments of conviction only after a careful analysis of the total evidence in those particular cases and held the error was not harmless after applying the test enunciated in *People* v. *Watson, supra,* 46 Cal.2d 818 [299 P.2d 243].⁴"

Footnote 4 states: "In *Fries,* the majority opinion concluded at pages 233-234 of 24 Cal.3d with the following statement: 'It is clear that the trial court erred in admitting the prior robbery conviction since the conviction was identical to the offense for which appellant was on trial. *Further, this court has no clue as to what appellant's testimony would have been had he testified. Absent any basis for concluding that such testimony would not have affected the result,* "the court is of the opinion 'that it is reasonably probable that a result more favorable to [appellant] would have been reached in the absence of this error.'" (*People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].)' (Italics added.) [¶] In *Spearman,* the court stated at page 118 of 25 Cal.3d: '*Finally, this court must decide whether the trial court's improper ruling constituted reversible error.* (*People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].) *After consideration of the evidence and the state of the record in this case, it cannot be concluded the error was harmless.* [¶] At the outset, it is recognized that the evidence presented at trial appeared, on paper, to have made out a strong, albeit circumstantial case against appellant. However, that evidence was not, even on a cold transcript, irrebuttable. [¶] More significantly, because of the trial court's erroneous ruling, appellant did not testify and thus was prevented from presenting any defense to the charges. (See also *People* v. *Fries, supra,* 24 Cal.3d at pp. 228-229 [155 Cal.Rptr. 194, 594 P.2d 19].) Unquestionably, appellant might have presented exculpatory testimony. He might, for example, have testified he was not aware of the presence of the heroin in the bumper or did not exercise dominion and control over it. He might have

explained that Bluett's car was routinely and recently used by other acquaintances of Bluett, including addicts such as Howard who may themselves have stored heroin in the bumper without the knowledge of the appellant. Alternatively, appellant might have admitted possession of the heroin for personal use but denied any intent to sell. Such testimony, if true would warrant a conviction for a lesser offense than possession for sale.' (Italics added.) [¶] In the most recent Supreme Court *Barrick* case, 33 Cal.3d 115 [187 Cal.Rptr. 716, 654 P.2d 1243], the court said at page 130: '*Having concluded that the trial court erred in denying defendant's motion to exclude evidence of his prior conviction as "sanitized," we must determine whether this error affected the judgment so as to require reversal. The evidence supporting the conviction was largely circumstantial.* Defendant was found asleep in a recently stolen automobile. The record reveals that following the ruling on the *Beagle* motion, the attorney for the defendant advised him not to testify. *This court has no way of knowing what defendant's testimony would have been, thus, we have no basis for concluding that such testimony would not have affected the result.* " '[E]rrors at a trial that deprive a litigant of the opportunity to present his version of the case . . . are . . . ordinarily reversible, since there is no way of evaluating whether or not they affected the judgment.' (Traynor, [The Riddle of Harmless Error (1970)] at p. 68.) A conviction under such circumstances is a 'miscarriage of justice' within the meaning of article VI, section 13 of the California Constitution. (See *People* v. *Watson* [(1956)] 46 Cal.2d [818, 836,] 837 [299 P.2d 243]; *People* v. *Gainer* (1977) 19 Cal.3d 835, 855 [139 Cal.Rptr. 861, 566 P.2d 997]; *People* v. *Fries, supra,* 24 Cal.3d at pp. 233-234.)" (*People* v. *Spearman, supra,* 25 Cal.3d at p. 119.)' (Italics added.)"

The court concluded: "Since the Supreme Court itself, in *Barrick, Spearman,* and *Fries,* applied the harmless error test as enunciated in *People* v. *Watson, supra,* 46 Cal.2d 818, to the evidence in those cases, it is axiomatic that it is the function of this court to review the entire record and determine whether or not the error in this particular case was, or was not, harmless by applying the same [*Watson*] test." (*People* v. *Fisher, supra,* 153 Cal.App.3d at pp. 834-835.)

Rogers' prior convictions were of robbery and driving another person's car. Theft crimes are without doubt morally turpid. Thus, the priors were admissible to impeach Rogers.

Rogers' attorney made the following statement as he explained that his client would not testify: "The—I wanted to just add a couple of things to the record about that in case there is some review of the matter later. That is to say that the defendant, I believe, could explain, if he did testify, why he was in the car and could explain discovery of the stolen property in the

car and could explain the injuries that were found on his person and deny the offenses. So I'll just submit that for the record." This statement, apparently made for our benefit, does not help Rogers. He was found with Lisa K.'s jewelry, calculators, and butcher knife; he was caught 45 minutes after the crime in the victim's car, which he drove at high speed and with the headlights extinguished in an attempt to escape the police; he belonged to the 4 percent of the population whose semen type was found on Lisa's sheets and bathrobe; he was positively identified by the victim; he was positively identified by Suzanne L., whom he tried to rape less than an hour earlier and but one block from Lisa K.'s apartment. The evidence of guilt is overwhelming and brings to mind the remark in *People* v. *Fisher:* " 'With or without [defendant Fisher's] impeachment [any version presented by him] would have strained the credulity of a rational trier of fact in such fashion as to render the improper references to [Fisher's] previous convictions of little consequence.' " (*People* v. *Fisher, supra,* 153 Cal.App.3d at p. 837, quoting *People* v. *Betts* (1980) 110 Cal.App.3d 225, 234 [167 Cal.Rptr. 768].) If there was a basis for an insanity defense—which the record does not suggest—or for any of the orthodox defenses and Rogers' counsel was provided or could have been provided with evidence to support such a defense, but counsel omitted to utilize the same such an issue can be reached by habeas corpus. The error was harmless.

■ Rogers' second point is that the evidence of another crime, i.e., the testimony of Suzanne L., should not have been admitted.

Evidence of uncharged offenses is inadmissible if intended merely to show the defendant's criminal propensities. (Evid. Code, § 1101, subd. (a).) However, such evidence is admissible if relevant to a contested issue at trial, such as identity. (Evid. Code, § 1101, subd. (b).) Admission of uncharged crimes lies within the sound discretion of the court, and will lead to reversal only if an abuse of discretion is found. (*People* v. *Thomas* (1978) 20 Cal.3d 457, 466 [143 Cal.Rptr. 215, 573 P.2d 433].) To be admissible, the prior must not be too remote; the prior must involve a similar victim; and the prior must be similar to the charged offense. (*People* v. *Epps* (1981) 122 Cal.App.3d 691, 699 [176 Cal.Rptr. 332].)

The identity of Lisa's assailant was the sole disputed issue. Therefore Suzanne's evidence was relevant to show that Rogers was the culprit. There is no problem with remoteness, the two attacks having occurred within an hour of one another. Both victims were young caucasian women living in the same neighborhood. The crimes share several common features: The attacker menaced each victim with a knife; the attacker gagged each victim with a piece of cloth; and the attacker forced each victim to lie face down.

Finally, both Suzanne L. and Lisa K. positively identified Rogers as their attacker.

■ Rogers asserts that Suzanne L.'s testimony was unnecessarily cumulative. Identity of a defendant charged with a crime is the "guts" of any prosecution for the crime charged. And although the testimony of a competent person who is the victim of a crime and who has been over a period of time in close contact with a named defendant is as close to demonstration of the fact of identity as evidence can make it, excessive care in this facet of a criminal prosecution needs no justification. We find no abuse of discretion in the admission of Suzanne L.'s testimony.

The judgment is affirmed.

Compton, J., and Beach, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 23, 1986.