Filed 4/16/13  P. v. Ibarra CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>  v.<br><br>DANIEL IBARRA,<br><br>      Defendant and Appellant. | B239043<br><br>(Los Angeles County<br> Super. Ct. No. KA092142) |


APPEAL from the judgment of the Superior Court of Los Angeles County.  Tia Fisher, Judge.  Affirmed as modified.

Maureen L. Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * * * * * *

Defendant and appellant Daniel Ibarra was convicted by jury of one count of second degree robbery (Pen. Code, § 211)[1], one count of misdemeanor battery against a person with whom defendant formerly had a dating relationship (§ 243, subd. (e)(1)), one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)), and one count of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)). It was found true that defendant suffered a qualifying prior juvenile adjudication for robbery, and served a prior prison term for domestic violence. Defendant was sentenced to a state prison term of 12 years 4 months.

Defendant contends he was denied the effective assistance of counsel at trial in violation of his Sixth Amendment rights. Defendant further contends that his prior juvenile adjudication should not have been used as a qualifying prior to enhance his sentence under the Three Strikes law. We conclude as to defendant's first contention that he has failed to show ineffective assistance. As to his second contention, defendant concedes the Supreme Court in *People v. Nguyen* (2009) 46 Cal.4th 1007 (*Nguyen*) has rejected his argument, and that we are bound to follow *Nguyen*, but seeks to preserve the issue for further appellate consideration.

Respondent argues the trial court erroneously awarded defendant conduct credits in excess of the 15 percent to which he was limited under section 2933.1 and seeks a one-day reduction in defendant's conduct credits.

We affirm the judgment of conviction, but modify the judgment to reflect 73 days of conduct credits instead of 74 days, for a total award of 561 presentence custody credits.

## FACTS

Defendant has not raised a substantial evidence question, and therefore we do not set forth all of the facts in the record supportive of the judgment. Instead, we

---

[1]     All further undesignated section references are to the Penal Code unless otherwise indicated.

summarize only those material facts pertinent to the issues raised on appeal, and those additional facts necessary for context.

Defendant Ibarra and codefendant Vanessa Morcillo (who is not a party to this appeal) dated for a period of time and have three children together. In August 2010, they were no longer dating and defendant had recently ended a seven-month relationship with the victim, to whom we will refer as Jane Doe to protect her privacy.

About a week before the charged incident, a fight erupted between defendant, Morcillo, and Jane Doe at a party at defendant's brother's apartment. Defendant hit Jane Doe and knocked her to the ground, but Jane Doe declined to speak with the police when they arrived on the scene.

Jane Doe did not have any contact with defendant for a week, but then she started to receive repeated phone calls and texts from him, most of which she ignored. However, she did respond to a few of his calls. Defendant claimed he wanted to apologize for what had happened and wanted Jane Doe to meet with him. She refused. Later when she went out to go shopping, she saw defendant driving behind her. He pulled alongside of her car and yelled at her to pull over. She was scared of him because he had hit her before, so she pulled over.

They both got out of their cars and defendant coerced Jane Doe to go with him in his car. Defendant told her, "Shorty, you know I'm always strapped." Jane Doe, whose nickname was "Shorty," understood that to mean he was carrying a gun and she knew he usually did have one, although she did not see one on him that day. Jane Doe had her purse with her, which was a bag with a shoulder strap, containing her wallet, keys, camera and cell phone.

Defendant and Jane Doe drove to a neighborhood park, where defendant pulled in and parked near some public restrooms. He got out of the car claiming he had to use the restroom. Before reaching the restroom door, defendant turned back and called to Jane Doe to come hold his cell phone and keys. As Jane Doe approached defendant near the entrance to the restroom, he made a gesture like he was going to hug her, but

3

then he quickly shoved her into the men's restroom, simultaneously "yanking" her purse off of her shoulder.

Inside the restroom, Morcillo and defendant's 14-year-old sister A.I. were waiting. Morcillo and A.I. began to punch and kick Jane Doe. Jane Doe heard defendant say "get [her] in the face." Jane Doe fell to the ground and tried to block her face from being kicked. She believed defendant kicked her at least once while Morcillo and A.I. were attacking her. She heard defendant say, "I told you, bitch, I was no little bitch." The attack lasted maybe "five minutes." Defendant, his sister and Morcillo then left the restroom together with Jane Doe's purse. She heard them "burning tire" in the parking lot.

Jane Doe got up and found two individuals in the park who let her use their cell phone to call a friend for help. She had a bruised and swollen eye, and multiple cuts and bruises to her ear, elbow, ribs and legs. Jane Doe contacted the police when she got home, but did not seek medical treatment for her injuries.

Defendant was charged by amended information with kidnapping (§ 207, subd. (a); count 1); inflicting corporal injury on a former cohabitant (§ 273.5; count 2); assault by means likely to produce great bodily injury (§ 245, subd. (a)(1); count 3); second degree robbery (§ 211; count 4); and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 5). Counts 3 and 4 (assault and robbery) were jointly charged against codefendant Morcillo. A.I. was separately prosecuted as a juvenile. Neither Morcillo nor A.I. is a party to this appeal, and we will not discuss the prosecutions against them here.[2]

It was specially alleged as to counts 1, 2, 4 and 5 that defendant had suffered a prior violent felony adjudication (§ 211) within the meaning of sections 667,

---

[2] In a previous unpublished decision, we affirmed the judgment of conviction against Morcillo. (*People v. Morcillo* (Jul. 9, 2012, B234207) [nonpub. opn].)

4

subdivision (b), and 1170.12, and had served a prior prison term (§ 273.5) within the meaning of section 667.5, subdivision (b). Defendant pled not guilty to all charges.

The case proceeded to a jury trial in April 2011 jointly against defendant and Morcillo. Defendant was represented by retained counsel, Attorney Charmaine Druyor. Attorney Druyor cross-examined Jane Doe extensively, including with transcripts of numerous recorded phone conversations between defendant and Jane Doe while defendant was in custody awaiting trial.

The jury found defendant guilty of second degree robbery, assault by means of force likely to produce great bodily injury, possession of a controlled substance (methamphetamine), and on count 2, guilty of the lesser included offense of battery against a former cohabitant (§ 243, subd. (e)(1)). Defendant was acquitted of the kidnapping charge.

Defendant's postconviction request to substitute his counsel with a different retained attorney was granted, and the sentencing hearing was continued. New defense counsel (Attorney Gary Meastas) filed a motion for new trial based on ineffective assistance of trial counsel. Counsel also filed a sentencing memorandum, requesting the court to strike the prior juvenile adjudication pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. The court denied defendant's motion for new trial and his *Romero* motion.

Defendant waived his right to a jury trial on the bifurcated prior allegations. The court received evidence of defendant's prior juvenile adjudication for robbery and prior conviction and prison term for domestic violence against Morcillo. The court found the priors true beyond a reasonable doubt.

The court sentenced defendant to an aggregate state prison term of 12 years 4 months, calculated as follows: the upper term of five years on count 4, robbery (the base term), doubled because of the strike; a concurrent six-month term on count 2, the misdemeanor battery; the middle term of six years on count 3, assault, stayed pursuant to section 654; and a consecutive middle term of eight months on count 5, possession of methamphetamine, doubled because of the strike; plus one year for the prior prison

5

term (§ 667.5, subd. (b)).  The court imposed various fees and penalties, and awarded defendant 488 days of actual custody credits and 74 days of conduct credits for a total award of presentence custody credits of 562 days.

This appeal followed.

## DISCUSSION

### 1.     The Ineffective Assistance of Counsel Claim

Defendant's primary contention on appeal is that he was denied the effective assistance of counsel in violation of his Sixth Amendment rights.

The burden is on defendant to establish ineffective assistance by a preponderance of the evidence.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 218 (*Ledesma*).)  Defendant "must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings."  (*People v. Cudjo* (1993) 6 Cal.4th 585, 623 (*Cudjo*), citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-696 (*Strickland*).)

On direct appeal, this burden can be stringent.  When the record on appeal " ' "sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," *the claim on appeal must be rejected*.'  [Citation.]  A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.  [Citations.]"  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 (*Mendoza Tello*), italics added; *People v. Jones* (2003) 29 Cal.4th 1229, 1254 [ineffective assistance claim properly resolved on direct appeal only where record affirmatively discloses no rational tactical purpose for counsel's actions].)

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'  [Citation.]."  (*Strickland*, *supra*, 466 U.S. at p. 689.)  Moreover,

6

"prejudice must be affirmatively proved. [Citations.] 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . [Citations.] Specifically, '[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.' . . . [Citation.]" (*Ledesma*, *supra*, 43 Cal.3d at pp. 217-218.)

Defendant argues his trial counsel, Ms. Druyor, was disorganized and unprepared, and also asked argumentative questions causing the judge to admonish her, which could only have served to inflame the jury against him. Defendant cites to several places in the record, primarily during counsel's cross-examination of victim Jane Doe, where Ms. Druyor asked repetitive questions and several instances where the court interjected for clarification or asked counsel to move on.

The record does not reflect why defense counsel chose to cross-examine Jane Doe in the manner in which she did. An attorney's style of questioning and his or her decisions to ask certain questions or forego certain areas of inquiry or possible impeachment are matters traditionally deemed to fall within the realm of trial tactics over which the court will not engage in "judicial hindsight." (*People v. Beagle* (1972) 6 Cal.3d 441, 458, superseded by statute on other grounds as stated in *People v. Rogers* (1985) 173 Cal.App.3d 205, 208-209; see also *People v. Zimmerman* (1980) 102 Cal.App.3d 647, 658 [failure to object to evidence ordinarily "held insufficient to establish an unconstitutional impairment of the right to effective counsel"].) Defendant's ineffective assistance claim is therefore properly rejected. (*Mendoza Tello*, *supra*, 15 Cal.4th at pp. 266-267.)

However, even considering the merits of defendant's claim, it still fails. The credibility of the victim was key to the prosecution's case, and it cannot be said there was no reasonable basis for defense counsel to aggressively challenge Jane Doe's credibility during cross-examination. Moreover, much of the questioning which

defendant contends shows an unprofessional lack of preparation concerns efforts to cross-examine the victim with numerous pages of difficult-to-follow transcripts from the phone conversations between Jane Doe and defendant while defendant was in custody. The trial court interjected at several points seeking to clarify dates and the issues being referenced. But the colloquies are fairly read as simply reflecting the complexity and difficulty of trying to impeach with the oftentimes rambling transcripts and the victim's inability to recall, or unwillingness to admit to inconsistencies in her statements.

The court, outside the presence of the jury, ultimately discussed the matter with counsel, stating to Ms. Druyor: "You did a fine job of cross-examination. You hit the points that you wanted to on motive and bias and the jury has been instructed. And I can advise again if counsel would all like me to if there are any portions of the conversations that are read that counsel have stipulated who the speakers are and the accuracy of the transcription. So at least you are in a situation – especially if Jane Doe can't remember anything." Counsel did agree upon a stipulation which was read to the jury.

" 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result*.' [Citation.]" (*In re Valdez* (2010) 49 Cal.4th 715, 729, quoting *Strickland*, *supra*, 466 U.S. at p. 686, italics added.) Nothing cited by defendant supports a finding that Ms. Druyor's conduct undermined the function of the adversarial process or resulted in an unfair trial with an unjust outcome. Indeed, defendant was acquitted of the most serious charge, kidnapping, and also of the count for felony domestic abuse, the jury convicting defendant only of the lesser included offense of misdemeanor battery on count 2. The mixed result reasonably reflects the jury fairly looked at the evidence presented by both sides and was not unfairly biased or inflamed against defendant based on the allegedly poor performance of his counsel. Defendant has failed to show that Ms. Druyor failed to act as a reasonably competent defense lawyer, or that a more

8

favorable outcome was probable in the absence of her purportedly unprofessional errors.

## 2. Defendant's Prior Juvenile Adjudication

Defendant raises a constitutional challenge to the use of his prior juvenile adjudication, in which defendant did not have a right to a jury trial, as a prior conviction for sentence enhancement purposes under California's Three Strikes law. However, defendant acknowledges that *Nguyen*, *supra*, 46 Cal.4th 1007 controls here and forecloses his claim. Indeed, *Nguyen* expressly held that despite the lack of a right to a jury trial in a juvenile adjudication, a prior juvenile adjudication is properly considered for sentence enhancement purposes. (*Id*. at pp. 1019-1025.) Defendant nevertheless raises the issue to preserve his right to challenge the holding in *Nguyen*. We are bound to follow Supreme Court precedent (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and therefore do not discuss the issue further.

## 3. Presentence Custody Credits

The trial court awarded defendant total presentence custody credits of 562 days, consisting of 488 days of actual credits and 74 days of conduct credits. Because of his conviction for felony robbery and felony assault, defendant was limited to conduct credits totaling no more than 15 percent of his actual period of presentence confinement. (See § 2933.1; *People v. Ramos* (1996) 50 Cal.App.4th 810, 815-817.) Respondent correctly argues that 15 percent of 488 is 73.2, and therefore defendant could not legally have been awarded more than 73 days of conduct credits. The court's award of 74 days amounts to jurisdictional error which may be corrected on appeal. (*People v. Fitzgerald* (1997) 59 Cal.App.4th 932, 935-936.) We modify the judgment to reflect 73 days of conduct credits for a total award of presentence custody credits of 561 days.

### DISPOSITION

The judgment is modified to reduce the amount of presentence conduct credits to 73 days for a total award of 561 days of presentence custody credits. In all other respects, the judgment of conviction is affirmed. The superior court is directed to

9

prepare a modified abstract of judgment and forward same to the Department of Corrections and Rehabilitation forthwith.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.