Filed 4/21/16  P. v. Haskin CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>    v.<br><br>EDDIE EARL HASKIN,<br><br>       Defendant and Appellant. | B264690<br><br>(Los Angeles County<br>Super. Ct. No. BA391618) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Douglas Sortino, Judge.  Affirmed.

D. Inder Comar, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Eddie Earl Haskin appeals from his conviction by jury of one count of corporal injury to a spouse, one count of disobeying a domestic violence protective order, one count of making a criminal threat, and one count of stalking. The charges arose from incidents that took place on August 22 and November 21, 2011 between defendant and his wife, Felecia Balam, from whom he was separated.

On August 22, 2011, Ms. Balam made numerous calls to 911 reporting that defendant was harassing her outside of a liquor store (as well as later that same day at her mother's home), he was making threats, and he was violating a restraining order by coming near her. Ms. Balam and defendant were married in 2008, but in August 2011, Ms. Balam was separated from defendant and no longer living with him. When he first approached her that day, he shook his fist at her and told her he "should f--- [her] up." He then walked away. Defendant then approached her again, still angry, grabbed her hard by both arms and yanked her hair. Defendant struck her on the left side of her head, and then ran off again, laughing. Ms. Balam returned to her mother's home nearby. The police eventually arrived, took a report from Ms. Balam and took photographs of an injury to her arm.

On November 21, 2011, one of the police officers investigating the August 22 incident was speaking with Ms. Balam at her mother's home. She told the officer that defendant had been served again, by her father, with a copy of a restraining order, and defendant had crumpled it up and thrown it on the ground. Defendant had also come over to the house earlier that day, uninvited. While the officer was speaking with Ms. Balam, she received a phone call from defendant. Defendant was speaking loud enough that the officer could hear what defendant was saying over the phone. Defendant said he did not care about any restraining orders and that he was going to come over to the house and "f--- [her] up."

Defendant was charged by information with four counts: corporal injury to a spouse (Pen. Code, § 273.5, subd. (a)); disobedience of a domestic violence protective order (§ 273.6, subd. (a)), making a criminal threat (§ 422, subd. (a)), and stalking

2

(§ 646.9, subd. (b)).  It was also alleged defendant had a prior qualifying strike (1991 robbery) within the meaning of the Three Strikes law (§ 1170.12, subds. (a)-(d), § 667, subds. (a)(1) & (b)-(i)), as well as a prior misdemeanor conviction for corporal injury to a spouse/cohabitant from 2011 within the meaning of section 273.5, subdivision (f). Defendant pled not guilty and denied the special allegations.

The case proceeded to trial by jury in March 2015.  Ms. Balam testified to the above incidents and a recording of her 911 calls was played for the jury.  The jury was also shown photographs, including one of an abrasion on Ms. Balam's arm which she identified as an injury she received during the altercation with defendant on August 22, 2011.  Officer Michael Zorkin of the Los Angeles Police Department testified to his investigation of the August 22, 2011 incident.  Officer Steven Franssen, who overheard the telephone conversation between defendant and Ms. Balam on November 21, also testified.

The jury was advised that defendant pled no contest in February 2011 to a misdemeanor violation of Penal Code section 273.5 involving Ms. Balam, that he was placed on three years formal probation, and was served with a protective order ordering him to not harass or annoy Ms. Balam, or come within 100 yards of her or her home.

The jury found defendant guilty as charged.  In a bifurcated proceeding, the court found the prior allegations true.

At the sentencing hearing, the court heard lengthy argument on defendant's motion pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). The court denied the motion, reasoning that while defendant's prior strike for robbery from 1991 was old, defendant had a "consistent and constant record of criminal convictions both felony and misdemeanor from 1990 through 2010" (including knowingly violating a domestic violence protective order), and therefore could not be characterized as someone with a background, record and character outside the spirit of the "Three Strikes" law.

3

The court sentenced defendant to a state prison term of 14 years 4 months, calculated as follows: the court selected count 1 (violation of Pen. Code, § 273.5, subd. (a) on Aug. 22, 2011) as the base term and imposed a midterm of four years, doubled due to the prior strike; a consecutive term on count 3 (criminal threat of Nov. 21, 2011) of eight months (one-third the midterm) doubled due to the prior strike; a concurrent term of 365 days on count 2 (violation of protective order); and, a five-year enhancement for the prior strike pursuant to section 667, subdivision (a)(1). On count 4, the court imposed and stayed, pursuant to section 654, a four-year midterm. The court imposed various fines and fees, and awarded defendant total custody credits of 317 days.

Defendant filed a timely notice of appeal. We appointed appellate counsel to represent defendant. Appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) in which no issues were raised. The brief included a declaration from counsel that he reviewed the record and sent a letter to defendant explaining his evaluation of the record. Counsel further declared he advised defendant of his right, under *Wende*, to submit a supplemental brief within 30 days, and forwarded copies of the record to defendant.

On February 19, 2016, defendant filed a handwritten letter brief enumerating 16 contentions as follows: "1. My attorney didn't rep[re]sent me correctly because she didn't ask the right question [during] examination. [¶] 2. The main witness at [trial] is a heavy alcoholic and she has lie[d] under oath in the pas[t]. [¶] 3. The court should not have granted the main witness immunity. [¶] 4. The court should not have played the old 911 tape to the jury. My attorney at trial wasn't prepare[d] for the 911 tape. [¶] 5. The main witness change[d] her testimony at trial from her previous testimony. [¶] 6. The district attorney threaten[ed] the main witness. [¶] 7. Police never stated he heard defend[a]nt threaten main witness. [¶] 8. Why wasn't cell phone records subpoena[ed?] [¶] 9. Why wasn't main witness['s] father subpoena[ed] to court if father gave defend[a]nt restraining order[?] [¶] 10. The main witness['s] picture was without braids. [¶] 11. Why w[ere]n't store clerk subpoena[ed] to court[?] [¶] 12. Why wasn't

4

my Ramro Act [*sic*] granted and strike is 25 year[s] old and rec[ei]ve[d] a 5 year enhancement[?] [¶] 13. Main witness has a criminal history and has been to prison [for] being violent. [¶] 14. Main witness has lock[ed] up many men on domestic violence issue being under the influence of alcohol. [¶] 15. Main witness being under influence of alcohol has call[ed] police on father. [¶] 16. Main witness was disappointed [during] our sep[a]ration." No further explication is provided in the letter as to the bases for defendant's claims of error.

Several of defendant's enumerated contentions are incomprehensibly vague and do not merit discussion (e.g., contention Nos. 1 & 10). However, the great bulk of defendant's contentions vaguely suggest that defense counsel failed to provide effective assistance at trial. Establishing ineffective assistance of counsel on direct appeal is a difficult burden. If " ' "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)

Further, a number of the contentions regarding counsel's performance pertain to the presentation of witnesses and evidence. Failure to present specific evidence or witnesses, ask certain questions in direct or cross-examination, or make certain objections to evidence are traditionally deemed to fall within the realm of trial tactics over which the court will not engage in "judicial hindsight." (*People v. Beagle* (1972) 6 Cal.3d 441, 458, superseded by statute on other grounds as stated in *People v. Rogers* (1985) 173 Cal.App.3d 205, 208-209; see also *People v. Huggins* (2006) 38 Cal.4th 175, 206-207.) The record here does not disclose any reason why defense counsel did not, for instance, call the liquor store clerk or the victim's father to testify, and we therefore cannot resolve those questions on this record.

As for the balance of the alleged deficiencies in defense counsel's performance, they are best described as counsel's alleged failure to impeach the credibility of the

victim, Ms. Balam. However, the record demonstrates that defense counsel cross-examined Ms. Balam quite extensively, asking questions about her regular alcohol consumption, inconsistencies in her prior testimony, and her admission that she previously lied in a written declaration submitted to the court. The record on appeal does not support a finding of ineffective assistance of counsel.

As for the grant of use immunity to Ms. Balam under Penal Code section 1324 relating to her preliminary hearing testimony, the record does not disclose any error by the court in granting the prosecution's request. Nor does the record establish any threat made to Ms. Balam by the prosecution.

Finally, defendant contests the denial of his "Ramro Act" motion. Because counsel also makes reference to his prior strike in connection with this contention, we assume defendant meant to raise the propriety of the denial of his *Romero* motion. A trial court's ruling denying a *Romero* motion is reviewed under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 375-376.) Defendant has not affirmatively shown that the trial court's sentencing choices were irrational or arbitrary. Indeed, the record demonstrates the court allowed extensive argument on defendant's motion and carefully considered the issues, setting forth with relative detail his reasons for denying the motion. The record does not reveal any abuse of discretion by the trial court.

As for any other potential appellate issues, we have examined the entire record of proceedings submitted to this court, and are satisfied that appointed counsel fully complied with his responsibilities in assessing whether or not any colorable appellate issues exist. We conclude there are no arguable appellate issues. (*People v. Kelly* (2006) 40 Cal.4th 106; *Wende*, *supra*, 25 Cal.3d 436.)

**DISPOSITION**

The judgment of conviction is affirmed.

GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.                    FLIER, J.

6