Filed 7/18/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S201186 |
| v. | ) | |
| | ) | Ct.App. 2/1 B223181 |
| DEWONE T. SMITH, | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. BA337647 |
| _____ | ) | |

Defendant Dewone T. Smith was charged with resisting an executive officer in the performance of his duties under Penal Code section 69 (hereafter section 69) and convicted by a jury. During the trial, the superior court denied defendant's request to instruct the jury that it could instead convict him of the lesser offense of resisting a public officer under Penal Code section 148, subdivision (a)(1) (hereafter section 148(a)(1)), a crime that defendant contends is necessarily included within section 69. We hold that section 148(a)(1) was a necessarily included lesser offense of section 69 as alleged in the amended information. But because the record does not reveal substantial evidence that defendant violated section 148(a)(1) without also violating section 69, the trial court was not required to instruct on section 148(a)(1). Accordingly, we affirm defendant's conviction.

## I.

On the morning of April 21, 2008, Los Angeles Deputy Sheriff Deloy Baker was working as a prowl deputy in Module 1700 of the Men's Central Jail.

1

Deputy Baker explained: "A prowl deputy just walks the tiers, ensures everyone's safety, that everyone is alive, and also provide[s] security when need be." Defendant was one of several inmates being moved from their cells in Module 1700 to another location. The inmates had gathered their belongings in large plastic trash bags, placed the bags in the center of the corridor, and lined up outside of their cells facing the wall. A deputy then began searching the inmates' belongings. Defendant turned away from the wall and told the deputy not to lose any of his "paperwork," which he described as "important legal materials." Deputy Baker instructed defendant not to talk and to face the wall. A few seconds later, defendant again turned away from the wall and told the deputy conducting the search not to lose his papers.

Defendant turned away from the wall a third time and said: "Don't lose any of my fucking paperwork." Deputy Baker testified that he "stepped up towards him . . . grabbed his left wrist with my left hand, put my right hand on the center of his back and assisted him to face the wall." Deputy Baker continued: "As I was holding him, I felt his body become tense, he was breathing a lot heavier, his hands were clinching up, that's when I gave him an order to put his — both of his hands behind his back so that way I could handcuff him." Defendant did not comply and instead spun to his left. Deputy Baker "took him down" so he could more easily handcuff defendant, losing his balance in the process and falling to the floor next to defendant. Defendant punched Deputy Baker twice in the face: "He jumps back up really quick before I was able to get proper footing and hits me twice with his left hand on the right side of my face." Deputy Baker was dazed but got to his feet and, with the help of other deputies, "wrestled [defendant] to the ground" and handcuffed him.

On September 11, 2008, defendant was incarcerated in the Twin Towers Correctional Facility in Los Angeles County. About 7 a.m., Los Angeles County

Deputy Sheriff Mark Tadrous arrived in Module 141 as part of an Emergency Response Team (ERT).  The ERT had been summoned because defendant refused to return to his cell.

Defendant was standing in the dayroom, yelling.  Sergeant Chafen asked defendant to return to his cell and explained that defendant would be forced to do so if he refused.  A deputy sheriff videotaped the incident, and the recording was played for the jury.  An eight-page transcript of the audio portion of the recording was introduced into evidence.  According to the transcript, Sergeant Chafen addressed defendant and said "now, the issue is — you don't want to go back to your cell and you don't want to go to court?"  Defendant responded, "You're right, I don't," adding:  "Because the simple fact is, your officers playin' with me. . . . They're playin' games, they're playing with my food.  I'm not keeping — I'm not going to play with nobody."  The sergeant asked, "Is there anything we can do today to work this out?"  Defendant responded, "Look man, all I just ask, I don't fuck with nobody — ."  Sergeant Chafen then said, "I'm going to ask you to go back to your cell, lock it down, otherwise you leave me no choice."  Defendant responded, "Well, I mean, I'm going to . . . I'm going to have to . . . I already let ACLU know."  The sergeant asked, "What is it you want to do?"  Defendant said, "You gonna have to kill me man, because that's going to get me up out of here, because I'm tired of . . . ."  Sergeant Chafen replied, "Well, we're not going to kill you."  The following colloquy then took place:

"Sgt.:  OK — do you realize what my option is?

"Smith:  Well I understand, whoa whoa, what is your option?  What is your option?  Please please, let me know.

"Sgt.:  I have to physically come in here and handcuff you and take you down to the hole.

". . . .

3

"Smith: But one thing you have to know — I'm going to be physical. I'm not going to — Somebody's going to get hurt. I'm not playin.' "

Deputy Tadrous entered the dayroom holding a large shield in front of him. Defendant threw a bowl that contained a mixture of urine and feces that struck the deputy on his arm. After firing Tasers as well as foam and rubber projectiles, the deputies succeeded in subduing defendant and placing him in handcuffs.

Based on the April 21, 2008 and September 11, 2008 incidents as well as two others not relevant here, an amended information charged defendant with, among other things, two counts of deterring or resisting an executive officer in violation of section 69. The trial court instructed the jury that a deputy sheriff is an executive officer and that defendant could be convicted of either count of deterring or resisting an executive officer in violation of section 69 if the prosecution proved that "One, the defendant used force or violence to resist an executive officer. [¶] Two, when the defendant acted, the officer was performing his lawful duty. [¶] And three, when the defendant acted, he knew the executive officer was performing his duty." The trial court further instructed the jury that defendant could be convicted of the second count of resisting an executive officer on September 11, 2008 if the prosecution proved either that he forcibly resisted an executive officer or, in the alternative, that defendant "willfully and unlawfully attempted to deter or prevent an executive officer from the performance of any duty imposed upon that officer by law, and the attempt was accomplished by means of a threat of violence."

The trial judge earlier had indicated to counsel that he was considering instructing the jury that it could convict defendant of resisting a public officer in violation of section 148(a)(1) as a lesser included offense of section 69. The prosecution argued "that a PC § 148 charge is, at best, a lesser related, rather than a lesser included offense" and "specifically object[ed] to giving the instruction."

4

The trial court ultimately declined to instruct the jury on section 148(a)(1) over defendant's objection.

The jury found defendant guilty of both counts of deterring or resisting an executive officer. The jury returned a special verdict on the second count, checking the box on the verdict form that said "Guilty because the defendant, violently or forcefully resisted deputies from the Los Angeles Sheriff's Department." The jury did not check the box on the verdict form that read "Guilty because the defendant willfully and unlawfully attempted to deter an executive officer from performance of a future duty by means of a threat of force or violence."

The jury also found defendant guilty of the other charges he faced. Defendant admitted that he had suffered four prior convictions but moved the trial court to dismiss them in the interest of justice. (See *People v. Romero* (1996) 13 Cal.4th 497.) The trial court denied the motion to dismiss and sentenced defendant to 150 years to life in prison.

The Court of Appeal affirmed the conviction but vacated the sentence and remanded the case with directions to the trial court to reconsider defendant's motion to dismiss his prior convictions and to exercise its sentencing discretion. The Court of Appeal concluded that section 148(a)(1) is not a necessarily included offense of section 69 and that even if it were, the trial court was not required to so instruct the jury because there was no substantial evidence that defendant committed the lesser offense without committing the greater offense. We granted defendant's petition for review to decide whether section 148(a)(1) is a lesser included offense of section 69, a question that has divided the Courts of Appeal.

## II.

"It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by

the evidence.  [Citations.]  The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.  [Citations.]" (*People v. St. Martin* (1970) 1 Cal.3d 524, 531.)  "That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged."  (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).)

In this case, neither the defense's request for an instruction on a lesser included offense nor the prosecution's objection to the request has any bearing on the issue before us.  That is because "California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense 'necessarily included' in the charged offense, if there is substantial evidence that only the lesser crime was committed.  This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence."  (*People v. Birks* (1998) 19 Cal.4th 108, 112.)  "[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other.  Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither 'harsher [n]or more lenient than the evidence merits.'  [Citation.]"  (*Id.* at p. 119.)  Thus, "a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence.  On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support."  (*Breverman*, *supra*, 19 Cal.4th at p. 162.)

6

## A.

For purposes of determining a trial court's instructional duties, we have said that "a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]" (*Birks*, *supra*, 19 Cal.4th at pp. 117–118, fn. omitted; cf. *People v. Reed* (2006) 38 Cal.4th 1224, 1228–1229.)

Section 148(a)(1) is not a lesser included offense of section 69 based on the statutory elements of each crime. Section 69 states: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment." We have explained that section 69 "sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 814.)

The first way of violating section 69 "encompasses attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such a duty at some time *in the future*." (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 817, fn. omitted.) The actual use of force or violence is not required. (See *id*. at p. 814 ["A threat, unaccompanied by any physical force, may support a conviction for the first type of offense under section 69. [Citation.]"].) Further, "the statutory language [of the first clause of section 69] does not require

7

that the officer be engaged in the performance of his or her duties at the time the threat is made. . . . Thus, for example, a person who telephones an off-duty officer at his or her home and threatens to kill the officer if he or she continues to pursue a lawful investigation the following day or week may be convicted of the first type of offense under section 69, even though the officer was not engaged in the performance of his or her duties at the time the threat was made." (*Id*. at p. 817.)

The second way of violating section 69 expressly requires that the defendant resist the officer "by the use of force or violence," and it further requires that the officer was acting lawfully at the time of the offense. (See *In re Manuel G.*, *supra*, 16 Cal.4th at p. 815 ["a defendant cannot be convicted of an offense against a peace officer ' "*engaged in . . . the performance of . . .* [his or her] *duties*" ' unless the officer was acting lawfully at the time the offense against the officer was committed"].)

Section 148(a)(1) is similar to the second way of violating section 69 but is clearly different from the first way of violating section 69. Section 148(a)(1) says: "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

A person who violates section 69 in the second way — by "knowingly resist[ing], by the use of force or violence, such officer, in the performance of his duty" — also necessarily violates section 148(a)(1) by "willfully resist[ing] . . . any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment." (*People v. Lacefield* (2007) 157 Cal.App.4th 249, 257 (*Lacefield*) ["it appears to be impossible to violate the second type of offense in

8

section 69 without also violating section 148(a)(1) . . . ."].)  But it is possible to violate section 69 in the first way — by attempting, through threat or violence, to deter or prevent an executive officer from performing a duty — without also violating section 148(a)(1).  A person who threatens an executive officer in an attempt to deter the officer from performing a duty "at some time *in the future*" (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 817) does not necessarily willfully resist that officer in the discharge or attempt to discharge of his or her duty under section 148(a)(1).  Accordingly, section 148(a)(1) is not a lesser included offense of section 69 based on the statutory elements of each offense.  (*People v. Belmares* (2003) 106 Cal.App.4th 19, 24 ["By the statutory elements test, . . . resisting is not a lesser included offense of deterring since one can deter an officer's duty *in the future* (§ 69) without resisting the officer's discharge or attempted discharge of a duty *at that time* (§ 148, subd. (a)(1))."]; *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1532 ["section 148 is not a lesser included offense of section 69, because section 69 can involve a present attempt to deter an officer's future duty"].)  We disapprove *Lacefield* to the extent it held that section 148(a)(1) is a necessarily lesser included offense of section 69 based upon the statutory elements of those offenses.  (*Lacefield*, at p. 259.)

But in determining whether a trial court has a duty to instruct the jury on lesser offenses, we also consider the language of the accusatory pleading.  (*Birks*, *supra*, 19 Cal.4th at p. 117.)  If the accusatory pleading in the present case had charged only the first way of violating section 69 — i.e., that defendant attempted, through threat or violence, to deter or prevent an executive officer from performing a duty — section 148(a)(1) would not have been a necessarily included offense.  But the amended information charged defendant with both ways of violating section 69.  In addition to the first way of violating the statute, the accusatory pleading also alleged that defendant violated the statute in the second

9

way by "knowingly resist[ing], by the use of force or violence, such officer, in the performance of his duty."  As explained above, section 148(a)(1) is necessarily included within this second way of violating section 69.

We addressed a similar situation in *People v. Barrick* (1982) 33 Cal.3d 115, which held that the trial court erred in refusing to instruct the jury that joyriding in violation of the former version of Penal Code section 499b (hereafter section 499b) is a lesser included offense of taking or driving a vehicle under Vehicle Code section 10851 (hereafter section 10851).  At that time, section 10851 provided that "[a]ny person who drives or takes a vehicle not his own, without the consent of the owner thereof, and with intent either permanently or temporarily to deprive the owner thereof of his title to or possession of the vehicle . . . is guilty of a public offense . . ." (Stats. 1976, ch. 1139, § 336, p. 5171), while section 499b made it a misdemeanor to, "without the permission of the owner thereof, take any . . . vehicle . . . for the purpose of temporarily using or operating the same . . . ." (Stats. 1965, ch. 1354, § 1, p. 3249).

Like the charged crime in the present case, there are two ways of violating section 10851:  the defendant can either "drive" or "take" the vehicle.  *Barrick* recognized that "joyriding is not intrinsically a necessarily included offense within Vehicle Code section 10851" (*Barrick*, *supra*, 33 Cal.3d at p. 133) because there could be "rare" instances in which a person could "take" a vehicle under section 10851 for the purpose of depriving the owner of possession, but not have the intent required under section 499b to use or operate the vehicle:  "for example, a vehicle could be towed with the specific intent to deprive the owner of possession without being towed for the purpose of using or operating the vehicle." (*Barrick*, at pp. 134-135.)  "Thus, so long as the charging allegation alleges merely a taking with the intent to deprive the owner of possession, violation of section 499b is not necessarily included." (*Id.* at p. 135.)

10

But the situation changes if the accusatory pleading charges the defendant with driving the vehicle. Although section 10851 states in the disjunctive that the statute applies if the defendant either "drives or takes a vehicle," the Attorney General notes in her briefing here that "[w]hen a crime can be committed in more than one way, it is standard practice to allege in the conjunctive that it was committed every way." *Barrick* reasoned that the accusatory pleading, "by accusing defendant of driving *and* taking a vehicle without the owner's permission, necessarily charged both a violation of Vehicle Code section 10851 and of [former] Penal Code section 499b" because "one cannot *drive* a vehicle without the purpose of using or operating it." (*Barrick*, *supra*, 33 Cal.3d at pp. 133, 135.) "Thus, a complaint which charges a defendant with 'driving and taking' an automobile necessarily charges that he took the automobile 'for the purpose of temporarily using or operating the same' and thus violated section 499b." (*Id*. at p. 135, fn. omitted.) Accordingly, *Barrick* held that the "charging allegation . . . render[ed] joyriding a necessarily included lesser offense within the charged violation of Vehicle Code section 10851." (*Barrick*, at p. 133; see *People v. Moon* (2005) 37 Cal.4th 1, 26 [following *Barrick*'s holding].)

Similarly here, section 148(a)(1) is not intrinsically a necessarily lesser included offense of section 69 because a defendant can violate section 69 in the first way, by attempting to deter an executive officer from performing a duty, without violating section 148(a)(1). But the amended information in the present case alleged in both counts that defendant violated section 69 not only in the first way but also in the second way by forcibly resisting an officer. As explained above, it is not possible to violate section 69 in this second way without also violating section 148(a)(1). Therefore, section 148(a)(1) was a necessarily included lesser offense of section 69 as alleged in the amended information.

11

This result comports with the purpose for requiring jury instructions on necessarily included lesser offenses. We have recognized that " 'the People have no legitimate interest in obtaining a conviction of a greater offense than that established by the evidence [and] a defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense. [Citation.]' [Citations.]" (*Breverman*, *supra*, 19 Cal.4th at p. 155.) The "broader interests served by the sua sponte instructional rule" are that it avoids "presenting the jury with an 'unwarranted all-or-nothing choice,' encourages 'a verdict . . . no harsher *or more lenient* than the evidence merits' [citation], and thus protects the jury's 'truth-ascertainment function' [citation]. 'These polices reflect concern [not only] for the rights of persons accused of crimes [but also] for the overall administration of justice.' [Citation.]" (*Ibid*.) "[T]he rule seeks the most accurate possible judgment by 'ensur[ing] that the jury will consider the *full range of possible verdicts'* included in the charge . . . . [E]*very* lesser included offense, or theory thereof, which is supported by the evidence must be presented to the jury." (*Ibid*.; accord, *People v. Barton* (1995) 12 Cal.4th 186, 196 [" 'Our courts are not gambling halls but forums for the discovery of truth.' [Citation.] Truth may lie neither with the defendant's protestations of innocence nor with the prosecution's assertion that the defendant is guilty of the offense charged, but at a point between these two extremes: the evidence may show that the defendant is guilty of some intermediate offense included within, but lesser than, the crime charged. A trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function."].)

The rule we affirm today — requiring sua sponte instruction on a lesser offense that is necessarily included in one way of violating a charged statute when the prosecution elects to charge the defendant with multiple ways of violating the statute — does not require or depend on an examination of the evidence adduced

at trial. The trial court need only examine the accusatory pleading. When the prosecution chooses to allege multiple ways of committing a greater offense in the accusatory pleading, the defendant may be convicted of the greater offense on any theory alleged (see *People v. McClennegen* (1925) 195 Cal.445, 452), including a theory that necessarily subsumes a lesser offense. The prosecution may, of course, choose to file an accusatory pleading that does not allege the commission of a greater offense in a way that necessarily subsumes a lesser offense. But so long as the prosecution has chosen to allege a way of committing the greater offense that necessarily subsumes a lesser offense, and so long as there is substantial evidence that the defendant committed the lesser offense without also committing the greater, the trial court must instruct on the lesser included offense. This allows the jury to consider the full range of possible verdicts supported by the evidence and thereby calibrate a defendant's culpability to the facts proven beyond a reasonable doubt. As our precedent has emphasized, such an approach does not, in purpose or effect, work to the advantage of either the prosecution or the defense. Instead, it serves to protect the jury's truth-ascertainment function. (See *Breverman*, *supra*, 19 Cal.4th at p. 155; *Barton*, *supra*, 12 Cal.4th at p. 196.)

Applying the rule to the statutory offenses at issue here, we summarize the trial court's instructional duty as follows: Where an accusatory pleading alleges both ways of violating section 69, the trial court should instruct the jury that if it finds beyond a reasonable doubt that a defendant committed either way of violating section 69, it should find the defendant guilty of that crime. If not, the jury may return a verdict on the lesser offense of section 148(a)(1) so long as there is substantial evidence to conclude that the defendant violated section 148(a)(1) without also violating section 69.

13

**B.**

As noted, our conclusion that section 148(a)(1) was a necessarily included lesser offense of section 69 as alleged in the amended information does not end the analysis because a trial court is not required to instruct the jury on a necessarily included lesser offense "when there is no evidence that the offense was less than that charged." (*Breverman*, *supra*, 19 Cal.4th at p. 154.) That is the case here.

In the April 21, 2008 incident, defendant physically resisted and punched the guard at the Men's Central Jail. In the September 11, 2008 incident, defendant again physically resisted the guards and was subdued only after the deputies used Tasers and foam and rubber projectiles. Defendant was either guilty or not guilty of resisting the executive officers by the use of force or violence in violation of section 69. There was no evidence that defendant committed only the lesser offense of resisting the officers without the use of force or violence in violation of section 148(a)(1). (See *People v. Carrasco* (2008) 163 Cal.App.4th 978, 985.) Accordingly, the trial court was not required to instruct the jury on the necessarily included lesser offense of section 148(a)(1).

## CONCLUSION

For the reasons above, we affirm the judgment of the Court of Appeal.

LIU, J.

WE CONCUR: CANTIL-SAKAUYE, C. J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.

14

**CONCURRING OPINION BY CORRIGAN, J.**

I concur in the majority's conclusion that Penal Code section 148, subdivision (a)(1) (hereafter section 148(a)(1))[1] was a lesser included offense of section 69 as alleged in the amended information. Our holding in *People v. Barrick* (1982) 33 Cal.3d 115, 133 (*Barrick*) compels this result. I write separately to express my view that *Barrick*'s interpretation of the accusatory pleading test is ill reasoned and lacks persuasive force. However, because neither party has urged us to overrule *Barrick* on that point, the question must await another day.

We have employed two tests to determine whether a lesser offense is necessarily included in a charged offense for purposes of the trial court's instructional duties: "a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the *facts actually alleged in the accusatory pleading*, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117 (*Birks*), italics added.) The majority correctly concludes that section 148(a)(1) is not a necessarily included offense of section 69 based on the statutory elements of each crime. This is because section 69 can be

---

[1]     Subsequent undesignated statutory references are to the Penal Code.

1

violated in two ways, one of which does not necessarily include a violation of section 148(a)(1). (Maj. opn., *ante*, at pp. 8-9.)

The question is whether a different result follows from the accusatory pleading test. Counts 2 and 5 of the amended information closely tracked the statutory language of section 69. The charging document added the dates of the offenses, the county, defendant's name, and the names of the victims. It also charged the alternative ways of violating section 69 in the conjunctive "and" rather than the disjunctive "or."[2]

For the answer, the majority looks to *Barrick*. There we considered the defendant's allegation that the court erred by refusing to give an instruction that joyriding (§ 499b) is a lesser included offense of unlawfully driving or taking a vehicle (Veh. Code, § 10851). (*Barrick, supra*, 33 Cal.3d at pp. 133-135.) Vehicle Code section 10851 can be violated by either driving or taking a vehicle. We observed that joyriding (which involves driving) is not a lesser included offense under the elements test because one can take a vehicle without driving it.

---

**2**      Count 2 alleged: "On or about April 21, 2008, in the County of Los Angeles, the crime of resisting executive officer, in violation of Penal Code section 69, a Felony, was committed by Dewone T. Smith, who did unlawfully attempt by means of threats and violence to deter and prevent Rowland, Esqueda, Lim, Baker, Moreno, Farino, who was then and there an executive officer, from performing a duty imposed upon such officer by law, and did knowingly resist by the use of force and violence said executive officer in the performance of his/her duty." (Some capitalization omitted.)

Count 5 alleged: "On or about September 11, 2008, in the County of Los Angeles, the crime of resisting executive officer, in violation of Penal Code section 69, a Felony, was committed by Dewone T. Smith, who did unlawfully attempt by means of threats and violence to deter and prevent Keith Fulkerson, Gudino, Mark Tadrous, Preston, who was then and there an executive officer, from performing a duty imposed upon such officer by law, and did knowingly resist by the use of force and violence said executive officer in the performance of his/her duty." (Some capitalization omitted.)

2

(*Barrick*, at pp. 134-135.) However, we held that, *as pled*, the charging document did make Penal Code section 499b a lesser included offense of Vehicle Code section 10851. We noted that the accusatory pleading had alleged Vehicle Code section 10851 in the conjunctive ("driving *and* taking"). (*Barrick*, at p. 133.) We concluded that, "by accusing defendant of driving *and* taking a vehicle without the owner's permission, [the pleading] necessarily charged both a violation of Vehicle Code section 10851 and of Penal Code section 499b." (*Ibid*.) "[A] complaint which charges a defendant with 'driving and taking' an automobile necessarily charges that he took the automobile 'for the purpose of temporarily using or operating the same' and thus violated section 499b." (*Id*. at p. 135.) Thus, we reasoned, "the charging allegation in this case does allege facts that necessarily include the former section within the latter." (*Ibid*.)[3]

The *Barrick* court's holding unmoored the accusatory pleading test from the principles on which it was based. In my view, charging a defendant in the statutory language coupled with the use of conjunctive pleading should not yield a different result than applying the statutory elements test.

*People v. Marshall* (1957) 48 Cal.2d 394 demonstrates the proper application of the accusatory pleading test. There, the information charged that the defendant had committed robbery by " 'willfully, unlawfully, feloniously and forcibly tak[ing] from the person and immediate presence of [the victim] . . . Seventy Dollars . . . and an *automobile . . . .*' " (*Id*. at p. 396, italics added.) The

---

[3] We have applied *Barrick*'s holding on this point in *People v. Moon* (2005) 37 Cal.4th 1, 26-27, a capital case involving the same two statutes at issue in *Barrick*. The Attorney General has challenged *Barrick*'s reasoning in at least one other case. (*People v. Sakarias* (2000) 22 Cal.4th 596, 622, fn. 4.) There, we found it unnecessary to revisit *Barrick* because the lesser offenses were not supported by the facts of the case.

defendant waived jury trial, and the trial court convicted him of taking a vehicle. (Veh. Code, former § 503, now § 10851.) We affirmed, holding that the taking a vehicle charge was necessarily included in the robbery charge under the specific language of the accusatory pleading, which "forthrightly allege[d] not only the statutory language of the greatest offense charged but also known details as to the manner of its commission." (*Marshall*, at p. 407.) We reasoned: "Although the statutory definition of robbery does not necessarily include the offense denounced by [former] section 503 of the Vehicle Code, the particular robbery specifically pleaded in the information here includes all the elements of a violation of [former] section 503. It is particularly alleged that the property taken was '*an automobile*.' The allegations of the information that the automobile was taken by robbery necessarily import the elements of theft, including the taking of the personal property of one other than defendant, with intent to steal [citations]." (*Marshall*, at pp. 399-400, italics added.)

By contrast, the use of the conjunctive "and" is not a "fact" alleged in the accusatory pleading. Nor does it effectively incorporate one theory of an offense into another for the purpose of defining the elements of the charged crime. When multiple theories of committing an offense are involved, the prosecution, by pleading the statute in the conjunctive, puts the defendant on notice that he may face conviction under either theory. The prosecution does not, however, assume the burden of proving each theory. *In re Bushman* (1970) 1 Cal.3d 767 held that "[w]hen a statute such as Penal Code section 415 lists several acts in the disjunctive, any one of which constitutes an offense, the complaint, in alleging more than one of such acts, should do so in the conjunctive to avoid uncertainty. [Citations.] Merely because the complaint is phrased in the conjunctive, however, does not prevent a trier of fact from convicting a defendant if the evidence proves only one of the alleged acts." (*Id*. at p. 775, disapproved on another ground in

4

*People v. Lent* (1975) 15 Cal.3d 481, 486, fn. 1; accord, *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1532-1533.) Accordingly, conjunctive pleading does not necessitate conjunctive proof. It therefore differs from factual allegations " ' "describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." [Citation.]' " (*People v. Lopez* (1998) 19 Cal.4th 282, 289, quoting *People v. Toro* (1989) 47 Cal.3d 966, 972.)

For this reason, the rule in *Barrick* is inconsistent with our rationale for requiring sua sponte instruction when a greater offense involving a *single theory* is charged. In *Birks, supra,* 19 Cal.4th 108, we explained that "[w]hen an accusatory pleading alleges a particular offense, it thereby demonstrates the prosecution's intent to prove all the elements of any lesser necessarily included offense." (*Id.* at p. 118.) As noted, no similar burden arises from the use of conjunctive pleading. The prosecutor retains "discretion to decide which crimes will be charged and on what theory they will be prosecuted." (*People v. Brigham* (1989) 216 Cal.App.3d 1039, 1052; see *Birks, supra*, 19 Cal.4th at pp. 128-129, 134.) Requiring sua sponte instruction in this circumstance poses risks similar to those identified in *Birks*, where we did away with the rule requiring instruction on lesser *related* offenses. In rejecting that rule we explained: "[I]f the prosecution *opposes* the jury's consideration of a lesser related offense which the prosecution did not charge, assumed no obligation to prove, and may thus have overlooked in presenting its case, the defendant, under *Geiger*, has the unqualified right to override the prosecution's objections. Regardless of prejudice to the prosecution, the defendant may insist that the jury be instructed on the lesser offense, thereby acquiring a third-option hedge against conviction of the charged offense. [¶] Where lesser related offenses are concerned, the *Geiger* rule therefore may actually permit and encourage a one-sided use of the 'gambling hall' strategies we

5

have consistently denounced." (*Birks, supra,* 19 Cal.4th at p. 128, citing *People v. Geiger* (1984) 35 Cal.3d 510.)

*Barrick* represents an unreasoned departure from otherwise settled precedent governing the accusatory pleading test and the trial court's sua sponte duty to instruct. The accusatory pleading test should not take into account the use of conjunctive pleading alleging two separate ways of violating a statute as set out in the statutory language. In effect, the accusatory pleading in this case states nothing more than the statutory elements. "When, as here, the accusatory pleading describes a crime in the statutory language, an offense is necessarily included in the greater offense when the greater offense cannot be committed without necessarily committing the lesser offense." (*People v. Marshall* (1997) 15 Cal.4th 1, 38; accord, *People v. Wolcott* (1983) 34 Cal.3d 92, 99.)

**CORRIGAN, J.**

**I CONCUR:**
**BAXTER, J.**

6

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Smith
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 203 Cal.App.4th 1051
**Rehearing Granted**

_____

**Opinion No.** S201186
**Date Filed:** July 18, 2013
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Jose I. Sandoval

_____

**Counsel:**

Melanie K. Dorian, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson, Michael C. Keller and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Melanie K. Dorian
P.O. Box 5006
Glendale, CA  91221-5006
(818) 241-5837

Ryan M. Smith
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2712